## American Car & Foundry Company v. Spears, et al.

(Decided February 13, 1912.)

### Appeal from Floyd Circuit Court.

1. Master and Servant—Injuries to Third Persons—Independent Contractor.—Where the operation of a "splash dam" necessarily creates a nuisance and involves a trespass upon the lands of another, and the injury is not the result of the negligent manner in which the dam is operated, the owner of the dam can not escape liability on the ground that he had employed an independent contractor to operate the dam.

2. Same—Damages—Excessive.—In an action for damages for injury to land resulting from the operation of a splash dam, evidence examined, and held that the damages awarded by the jury are not excessive.

HARKINS & HARKINS for appellant.

MAY & MAY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiffs, Lizzie and Harvey Spears, infants suing by their guardian, Amos Spears, and Maud Clark, suing by her husband and next friend, Dick Clark, and Netta Clark, charging that the defendant, American Car &

Foundry Company, was the owner of a splash dam above their lands, and so operated the dam as to injure their lands, fencing and growing crops, brought this action to recover damages in the sum of $500. With the exception of the ownership of the dam, the allegations of the petition were denied by answer. Defendant further pleaded that it had contracted with one John B. Harris, to haul and deliver their timber, and that Harris alone operated the dam, and that he was an independent contractor, and if the land was injured, which it denied, that Harris alone was responsible. The jury returned a verdict in favor of plaintiffs, Lizzie Spears, Harvey Spears and Maud Clark for the sum of $250, it having appeared during the trial that the defendant had compromised with Netta Clark, the other plaintiff. Judgment was entered accordingly, and the defendant appeals.

It appears that Dick Clark, husband and next friend, of Maud Clark, did not file his affidavit showing his right to sue as next friend. Defendant, therefore, moved to dismiss the action. Before the court passed upon the motion, the defendant without reserving its right to insist upon the motion, answered to the merits. The objection was, therefore, waived.

While the petition does not describe the land as definitely as it might have done, the land was fully identified by the evidence, and there can be no doubt that the petition in this respect is sufficient to support the judgment.

It appears from the evidence that plaintiffs inherited their farm from their father, Lafayette Spears, and while they did not prove title by record, they did prove title by adverse possession. Their farm lies on both sides of Buffalo creek for a distance of over half a mile. Some time before the institution of this action, defendant acquired a large boundary to timber standing on land situated above the lands of plaintiff. For the purpose of getting this timber to market, defendant constructed a large "splash dam." The dam was built of heavy timbers closely laid, so as to catch and hold the water. It had flood gates which could be easily opened to let the water out after the dam became full. By this means there was caught a sufficient volume of water to flood the channel below and float out large quantities of heavy logs. The volume and velocity of the water were

so great that it washed away the soil from plaintiffs' lands, and destroyed the fencing and growing crops.

It is insisted by appellant that it is not liable because the evidence conclusively shows that Harris, who operated the dam was an independent contractor, who had employed his own hands and who had undertaken to get the timber out at so much per cube. This contention, however, overlooks the well recognized exception to the doctrine of non-liability on the part of the owner for injury caused by an independent contractor; for it is well settled that if the work contracted for by the proprietor of real property is wrongful per se, that is, if in the ordinary mode of doing it, it will create a nuisance, or if it involves a trespass upon the property of another, the proprietor will be liable for any injury which may result from it to a third person, although the work is done by a person exercising an independent employment and hiring his own servants. The principle briefly stated is that one who employs another to commit a nuisance or a trespass, must answer for it, although he exercises no control over that other as to the mode employed by him to reach the unlawful results (Thompson on Negligence, Vol. 1, Sec. 648; 26 Cyc., 1558; Pine Mountain R. Co. v. Finley, 117 S. W., 414). It is admitted that the defendant owned the dam. The injury to plaintiffs' land was not due to the contractor's negligence in operating the dam, but was the natural, ordinary, and necessary result of its operation. Therefore the ordinary mode of doing the work not only created a nuisance, but involved a trespass. That being true, we conclude that defendant is liable, even if it be conceded that Harris was an independent contractor.

It is also contended that the damages allowed are excessive. One of plaintiffs' witnesses says that about four acres of bottom land was carried away. Defendant claims, however, that this estimate is extravagant because witnesses' figures do not bear him out. True the witness speaks of two places, 300 feet long by 70 feet wide, which would make only one acre, but he also speaks of several other places. Another witness makes an estimate of two acres. A third says the damage amounted to only $40 or $50, while a fourth witness says that about an acre of land was carried away, and that the land was worth $100 per acre. It also appears that a sweet potato crop worth about $25 and seventy panels of fence were destroyed. During the trial, defendant introduced

a receipt from Netta Clark showing that it had settled with her on the basis of $50. She owned only one-fourth of the land. Upon these facts we can not say that the finding is excessive for if it be conceded, as one of defendant's witnesses, and the only witness upon the question of value, stated, that the land was worth $100 per acre, and that only two acres were carried away, and then allow for the sweet potatoes and the fencing, a verdict of $250 is about right.

While the instructions may be subject to criticism, we shall not reverse for that reason, for upon a consideration of the whole case, we conclude that substantial justice was done.

Judgment affirmed.