## Steinke v. North Vernon Lumber Company.

(Decided January 18, 1921.)

### (Common Pleas, Third Division).
### Appeal from Jefferson Circuit Court.

1. Appeal and Error—Order Granting New Trial Not Final—Substitution of Verdict.—Where a trial court wrongfully granted a new trial, the party aggrieved can not appeal from the order granting the new trial because it is not a final order, but if the verdict and judgment on the second trial be more unfavorable to him than the first he may on appeal from the second judgment have a review of the first proceeding and the order granting the new trial, and this court will, if the new trial was improperly granted, direct the substitution of the first verdict and judgment which was erroneously set aside for the second verdict and judgment.

2. Appeal and Error—New Trial.—Where there was sufficient evidence to sustain the verdict and there were no errors committed in the admission or rejection of evidence, and the instructions of the court correctly presented the law of the case and the record failed to disclose any sufficient reasons for the granting of a new trial, and the order granting the new trial assigns no reasons, the first judgment will be substituted for the second.

3. Waters and Water Courses—Damages—Submission to Jury—Instructions.—In an action to recover damages for the wrongful flooding of lands by diverting surface water from the upper estate on to the lower, any substantial change in the ditches or contour of the upper estate which took place within five years next before the bringing of the action, and which cast the water upon the lower estate in greater volume or with greater destructive force than that in which it ordinarily ran, to the damage of the lower estate, will warrant the trial court in submitting the

case to the jury, and the finding of the jury under proper instructions will not be disturbed unless palpably against the weight of the evidence.

BURKE & LAWTON and EDWARD C. WURTELE, for appellant.

JOHN J. DAVIS, LEON P. LEWIS and BLAKEY, DAVIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Steinke is a gardener who owns two small plots of ground, and has in his possession under lease adjacent ground in the outskirts of Louisville on which he has for many years grown vegetables for market. Just north of and adjacent to his place, the North Vernon Lumber Company owns a tract of about eight acres on which it has a mill, lumber yard and railroad switch. The lumber company acquired its property after Steinke purchased his ground and began to garden in that vicinity in 1903 and 1904. The ground where the mill now stands was formerly used for gardening purposes. In fact, Steinke had cultivated it one or more years, and several other practical gardeners had also cultivated all, or part of it. This plot had two knolls, or high points, which rose eight or ten feet higher than the surrounding ground. Between these knolls was a sink or low place into which water ran and stood. The ground where Steinke now lives and has his garden is almost flat and somewhat lower than the mill property, but between the two properties is a little driveway which is somewhat higher than the ground on either side. Before the mill was erected the lumber company leveled down the two knolls or high points on its property, using the dirt to fill up the sag in which the water had theretofore gathered. The mill was built almost exactly on the spot where the sag had formerly been. The lumber company then dug ditches from its mill site in the direction of Steinke's line, to carry off the water. This was about the year 1905. Since that time the ditches have been cleaned out and enlarged according to the contention of Steinke so that the water has been gathered and cast upon his garden in greater quantities and in a different way from its natural flow to the great detriment of his truck patches and gardens, and this action was instituted by Steinke against the lumber company to recover for the loss which resulted from his ground being over-

flowed by surface water from the premises of the lumber company. The accompanying map will aid in understanding the lay of the ground and the relation of one tract to the other:

There have been two trials of the case in the circuit court. On the first trial the jury awarded Steinke $500.00 in damages. Motion and grounds for new trial were filed by the lumber company and sustained by the court without assignment of reason. To the motion for a new trial Steinke objected, and excepted to the order granting it, and a bill of exceptions was thereupon prepared, approved and signed by the trial judge. The second trial resulted in a verdict for the defendant lumber company, and Steinke prayed an appeal from that as well as the former judgment, and insists that the former verdict and judgment should be substituted for the verdict and judgment rendered upon the last trial, because, he says, the trial judge in granting the new trial to the lumber company assigned no reason for doing so, and there in fact existed no sufficent or valid reason for granting the new trial. If the new trial was improperly granted without sufficient grounds therefor, or in violation of the rights of Steinke, the first verdict and judgment should be substituted for the latter and the present judgment reversed. If, however, errors occurred upon the first trial which warranted the trial court in granting a new tral, or which would have justified this court in reversing the judgment had no new trial been granted and had it been appealed here, then appellant is not entitled to have that verdict and judgment substituted for the verdict and judgment rendered upon the last trial of the case. We will, therefore, briefly examine the evidence and instructions of the court to determine the correctness of that judgment.

The motion and grounds for a new trial which was filed February 9, 1918, and which was sustained by the trial court contains the following:

1. The court erred in refusing to grant the motion of the defendant for a peremptory instruction at the close of the plaintiff's evidence, and again at the conclusion of all the evidence.

2. The errors of the court in admitting and refusing testimony to all which defendant objected and excepted at the time.

3. The court erred in giving instructions 1, 2, 3, 4, and each of same, to which defendant excepted at the time.

4.   The court erred in refusing instructions 1 and 2 offered by defendant, to which defendant excepted at the time.

5.   The verdict of the jury is contrary to the law and the evidence, and is flagrantly against the evidence.

6.   The damages assessed by the jury are excessive and were given under the influence of passion or prejudice.

7.   Error in the assessment of the amount of recovery in that the amount of the verdict is too large under the instructions of the court.

The trial court did not err in overruling the motion of the lumber company for a directed verdict in its favor made at the conclusion of plaintiff's evidence and again at the conclusion of all the evidence. The evidence shows that Steinke had owned and lived on part of the premises which he cultivated for some time before the lumber company acquired its ground, leveled it down and built its mill; that ditches were opened by the lumber company in which to gather and carry the water from its property to the line of Steinke; that these ditches were cleaned out, widened and deepened from time to time up to about the time of the bringing of this action and that this enlargement of the ditches caused a greater volume of water to be gathered in and to be carried on to the premises of Steinke and that this extra volume of water overflowed his garden, washed up his onions and potatoes and drowned out corn, beans and other vegetables; that on one occasion he planted twenty barrels of onion sets when a rain came and the water from the lumber company's ground was carried through the ditches on to his premises in such volume and with such force that it washed up his onions and he had to reset them; another rain came and washed them up a second time and he again reset them; and a third rain produced about the same result, so that he was required to set his onion crop about three times that year. He gave in detail his loss sustained in each of the five years next before the bringing of this action, because the trial court confined plaintiff Steinke to the loss sustanied to his crops by reason of the overflow of water from the lumber company's lands which was an increase or augmentation of the flow of water coming from the lumber company's premises before the ditches were widened and deepened within the five years next before the action was com-

menced. The evidence also proved that before the lumber company acquired its grounds the water was gathered in the sag or low place about the point where the mill now stands and did not run off on to the premises where Steinke now gardens; that when the lumber company leveled its ground and filled up the low places in which water had theretofore gathered, the water was then cast in greater volume upon the Steinke premises. It further shows that while ditches were made on the lumber company's premises in 1905, they were enlarged from time to time up to the commencement of this action. The increased size of the ditches as well as the new ditches constructed by the company gathered a greater volume of water from the lumber company's premises and cast it upon the premises of Steinke in a different way and in greater volume from that which would naturally have gone thereon from the premises of the lumber company.

(1) The trial court could not, therefore, ignore this evidence and direct the jury to find and return a verdict for the lumber company. It correctly overruled the motion of the company for a peremptory instruction in its favor.

(2) There was no error committed by the trial court in admitting or refusing testimony at the first trial, at least there was no objection made by the lumber company to the introduction of evidence which was not sustained by the court except in two or three instances, to which attention will be called; and all objections made to the evidence of the plaintiff Steinke were sustained by the trial court. While Steinke was testifying and relating a conversation had between Mr. Hess, the foreman of the lumber company, and himself concerning the water running on to the garden, and had concluded his answer, counsel for the lumber company objected; the court overruled the objection no doubt upon the ground that the statements of the foreman of the lumber company with reference to letting the water run upon the premises of the gardener were competent. Certainly the statements of the person in charge of the lumber company's plant, it being a corporation, would be competent against it to show what had been done by the company with reference to turning water on to the premises of Steinke, and the court correctly so held. On the same page of the transcript of evidence the plaintiff was testifying to what had been said by a Mr. Stilson

who was sent by Mr. Platter, the president or general manager of the lumber company, to ask permission of Steinke to let the lumber company run its water into his field. Objection was made to this by counsel for the lumber company, and the court asked:

"Q. You say that this talk was with whom? A. With Mr. Stilson, what Mr. Platter sent down to me in 1916. By the Court: Well, he can answer."

The company reserved exceptions. This evidence was also competent as tending to show what the company was preparing to do with the water from its premises and the court was correct in its ruling.

The same witness was about to tell what he had said to his wife on one occasion, when objection was made and the court sustained the objection and admonishing the witness, said "I told him not to state what he said to his wife." Immediately following this, the witness was asked further concerning the conversation with the manager of the lumber company, to which objection was made and the court allowed him to answer. This was not error. These are the only objections made to the introduction of evidence, by counsel for the lumber company which were not sustained; and if the court had ruled otherwise than as it did, it would have been harmless error only, because none of the questions or answers, in the light of the whole record, were of sufficient importance to have influenced the jury in the slightest degree. In fact, they are largely inducement to other evidence which the plaintiff desired to introduce.

(3) The instructions given by the court fairly and substantially stated the law of the case. The first instruction told the jury that the owner of the higher or upper estate was not liable to the owner of the lower or servient estate for injury from water flowing from the upper on to the lower estate in the ordinary and usual way; but that if the owner of the upper estate changed the natural course of the water from its property or caused it to collect and to be cast upon the lower estate in a larger volume or in an unusual or swift stream, the owner of the upper estate is liable. The jury was further instructed that the grading of the lands by the lumber company and the filling up of the sag in which water had naturally gathered was a permanent improvement, and as it had happened more than five years before the commencement of this action no re-

covery could be had on that ground. In fact, the first instruction allowed the jury to make no finding for the plaintiff Steinke. The second instruction told the jury that if it believed from the evidence that subsequent to the grading of the land and the construction of the ditches mentioned and within five years next before the commencement of the action the lumber company had so changed the surface of its property or enlarged the ditches originally constructed, or built new ditches, the result of which, under the evidence, was to collect the water upon the lands of the defendant company and to cast it upon the cultivated property of Steinke in an unusual volume or quantity, or in a different manner from its natural course, and thereby the crops of Steinke were injured, its verdict should be for the plaintiff Steinke, but unless it so believed from the evidence its verdict should be for the defendant company. The third instruction told the jury that if the overflow of the lands of Steinke was caused by extraordinary rains or flood, that is, such rains and floods as were of unusual occurrence in that vicinity and could not have been anticipated by persons of ordinary experience and prudence, the verdict should be for the defendant company.

The fourth instruction contained the measure of damages. By it the jury was told that if it found for the plaintiff it should award him such sum in damages as the jury believed from the evidence would fairly and reasonably compensate him for the fair market value of the crops destroyed, if any, not to exceed the sum of $1,200.00. These instructions were all that were given, and substantially and fairly presented the law of the case. They are almost exactly the same as those given on the last trial which appellee insists are the law of the case.

(4) The defendant company offered two instructions which the court declined to give, as offered, but which were in substance included in that given by the court. No error therefore was committed in this regard.

(5) Complaint is made that the verdict is contrary to and flagrantly against the evidence, but there is no real basis for such complaint because there is abundant evidence to support the verdict as shown by the foregoing brief review thereof.

(6-7) If the plaintiff Steinke was entitled to recover at all, the amount awarded him, $500.00, was not

excessive. The evidence shows that he lost several crops of vegetables, the amount and value thereof, and when these amounts are cast up, the total sum is much greater than $500.00.

It is insisted by the lumber company that the appeal granted on July 10, 1919, from the judgment entered in April, 1918, in the first trial, by the trial court is a nullity, and so much of this appeal as relates to the first trial of the case should be dismissed. With this we can not agree. No appeal from the order granting a new trial would lie because there was no final judgment. Mergenthal v. Southern Covington Railroad Company, 104 Ky. 424; Schweitzer v. Irwin's Exor., 19 Ky. Law Rep. 624; 41 S. W. 265; Chrisman v. Chess, Wymond & Co., 19 Ky. Law Rep. 1244; 43 S. W. 426; Miller v. Ashcraft, 98 Ky. 314.

As no appeal would lie from the order granting a new trial Steinke was obliged to abide his time and all he could do was to save proper exceptions to the order granting a new trial. Such an order is interlocutory in its nature and although it may be highly prejudicial, the injured party must wait until the court finally disposes of the case and then take an appeal from the judgment, and carry up the former judgment and bill of exceptions. That was done in this case. When such a course is pursued this court may review the action of the lower court in setting aside the verdict and judgment upon the first trial, and if it be convinced that there was no substantial ground for the granting of the new trial, that the new trial was in violation of the rights of the complaining party and that the judgment would not have been reversed had the new trial been refused, and the case appealed to this court, it may order a reversal of the final judgment and the substitution of the first verdict and judgment in lieu thereof. L. & N. v. Mitchell, 87 Ky. 327; Nolan's Admr. v. Standard Sanitary Mfg. Co., 33 Ky. Law Rep. 745; Meek v. Patten, 12 Ky. Law Rep. 796; Smith's Admr. v. Louisville Ry. Co., 174 Ky. 784; Louisville College of Dentistry v. Hartford Steam Boiler & Perkins Ins. Co., 185 Ky. 778; Perkins v. Ogilvie, 148 Ky. 309.

Of course the trial court has a broad discretion in granting and refusing a new trial, but this discretion must not be abused, and it is abused by the granting of a new trial where no sufficient or sound reason exists

or is shown therefor. Nor can it travel outside the record to find grounds for such new trial. In this court the same rule prevails and we will not go outside the record as presented to surmise that the trial court may have known some fact or been impressed by some act or conduct of the witnesses or counsel occurring at the trial which does not appear of record, in granting the new trial. If such ground for a new trial existed the court should have so set forth in his order sustaining the motion for a new trial. The court in granting a new trial assigned no reason whatever. The order reading: "The verdict and judgment entered herein be and the same are hereby set aside and held for naught and the defendant granted a new trial." If there were any reasons why a new trial should be granted other than those appearing in the record the trial court probably would have set them forth.

Undoubtedly the trial court granted a new trial because it was of opinion that there was not sufficient evidence to sustain the verdict. In this is was in error because a review of the evidence confirms us in the belief that there was sufficient evidence to take the case to the jury and to sustain the verdict. While there are many contradictions in the evidence and some irreconcilable conflicts, the jury had the right to judge the credibility of the witnesses and to determine from the evidence what damage, if any, had been occasioned to the crops of Steinke by the increased flow of the surface water from the premises of the lumber company, according to the instructions of the court and the measure of damages therein contained. A trial court has no right to disturb the finding of a jury and grant a new trial merely because it may not agree with the verdict of the jury, if the evidence be sufficient to support it, as was true in this case. This court will not disturb a verdict of a jury unless it be palpably against the weight of the evidence. The circuit court must be governed by a similar rule.

We conclude therefore that the trial court erred in sustaining the motion and grounds for a new trial and in granting the new trial. The judgment is reversed with directions to the lower court to set aside the verdict and judgment entered upon the second trial and in lieu thereof substitute the verdict and judgment returned and entered on the first trial.

Judgment reversed.