# CHARLESTON.

SIDNEY J. TRUMP *v.* BLUEFIELD WATER WORKS & IMPROVEMENT COMPANY

(No. 5228)

Submitted March 10, 1925. Decided September 8, 1925.

1. DAMS—*Duty to Provide Against Floods.*

   One constructing and maintaining a dam across a stream must take into consideration such freshets as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence. (p. 427.)
   (Waters, 40 Cyc. p. 683.)

2. MASTER AND SERVANT—INJURIES TO THIRD PERSONS—INDEPENDENT CONTRACTORS.

   The defense of independent contractor has no application where a resulting injury, instead of being collateral and

flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable though the negligence is that of an employee of the independent contractor.    (p. 429.)

(Master and Servant, 26 Cyc. p. 1560.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by Sydney J. Trump against Bluefield Water Works & Improvement Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Sanders, Crockett, Fox and Sanders,* for defendant in error.
*A. J. Lubliner and John Kee,* for plaintiff in error.

LITZ, JUDGE:

The plaintiff, S. J. Trump, sued in trespass on the case for recovery of damages to his land by flood resulting from the breaking of dams, June 13, 1923.

The defendant, Bluefield Water Works & Improvement Company, is, and for many years has been, a public service corporation engaged in supplying water to the city of Bluefield and its inhabitants.  In 1901 it constructed in and across Mill Branch, a tributary of East River, in Mercer county, a dam 20 feet high, 120 feet long, and of considerable thickness, for the purpose of impounding the stream for use in its public service business.  The structure consisted of connected log pens filled with rock and shale, and planks vertically attached to the upper side thereof embanked with earth. On or near the bed of the stream, extending through the dam, was laid a drain pipe or culvert 24 inches in diameter.  A spillway originally of wood, but later concrete, was provided on top of the dam for the overflow.  This outlet, according to the evidence of defendant's witness, John Eagle, was 20 feet long and 6 feet deep.  The dam was used for a few years, but for the most part, including a period of ten or twelve years next preceding 1923, remained open.

On or about the beginning of that year the defendant employed O. S. Hoard & Company, a contractor, to construct, in accordance with plans and specifications, an earthen dam extending 15 or 20 feet higher and completely enveloping the original dam. The contractor started the new work below the old dam in February following, and continued the construction thereof up to the occurrence causing the injury complained of, when the new dam had attained a height of about 10 feet above the old work, there being at the time however, a space of about 10 feet between the two obstructions in the stream to be filled as the work further progressed.

According to the evidence for plaintiff, heavy rains fell in the vicinity between Sunday, June 10, and Tuesday, June 12, 1923, but there had been little rainfall for a period of from eighteen to twenty-four hours immediately preceding the breaking of the dams, which occurred about 11:30 a. m. Wednesday, the 13th. The twenty-four inch drain pipe which had been extended through the new work was not fully opened until Monday night, when the old dam, as it seems, had become practically full of water. This pipe thereafter proving incapable of carrying off the accumulation of water, by Wednesday the water had almost reached the top of the new dam, when a trench was dug at one end thereof to start drainage from the top. The flow of water through this trench soon disintegrated that end of the new dam, causing the water thus released to cut deeper a ditch which theretofore had been dug across the center of the old dam, whereupon most of the water held by both dams was caused to escape, resulting in material damage to the plaintiff's premises.

Judgment was entered upon the verdict for $1400.00 in favor of plaintiff, and the defendant brings error. The following grounds, which will be considered in the order stated, are relied upon for reversal:

(1) That the breaking of the dam was due to a cause which the defendant could not have reasonably anticipated.

"One constructing and maintaining a dam across a stream must take into consideration such freshets as from climatic and geographical conditions may reasonably be expected,

whether of frequent or infrequent occurrence." *Anderson* v. *Rucker Bros.,* (Wash.) 183 Pac. 70, 8 A. L. R. 544.

A dam whereby waters are stored and penned back must be sufficient to withstand the usual and ordinary freshets and if the stream is occasionally subject to great freshets, those must likewise be guarded against. The degree of care and foresight which it is necessary to use in such cases must always be in proportion to the nature and magnitude of the injury that will be likely to result from the occurrence which is to be anticipated and guarded against. 27 R. C. L. p. 1209; *Gray* v. *Harris,* 107 Mass. 492, 9 Am. Rep. 61; *City Water Works Co.* v. *Fergus Falls,* 113 Minn. 33, 128 N. W. 817; Ann. Cas. 1912-A, 108 and note; 32 L. R. A. N. S. 59; *Greenock Corp.* v. *Calledoniun R. Co.,* A. D. (Eng.) 556; Ann Cas. 1918-A, 1103. The builder of such dam is not required, however, to provide against unprecedented floods. *Taylor* v. *C. & O. Ry. Co.,* 84 W. Va. 442, 100 S. E. 218, 7 A. L. R. 112.

The case was tried in accordance with the rule stated, the issue of fact being whether or not the flood which caused the injury complained of was unprecedented or merely a usual freshet of infrequent occurrence. According to the evidence for plaintiff there had been since the construction of the first dam greater floods in Mill Branch, one occurring as late as 1919. The testimony for defendant to the contrary is based upon opinion rather than actual observation. The finding of the jury on this point is therefore fully sustained by the evidence.

(2) That the new work, which prevented the escape of the water through the spillway of the old dam, was being done by an independent contractor for whose acts defendant is not responsible.

The facts and circumstances are not sufficient to establish the defense of independent contractor. The work was being done under the inspection and in accordance with the plans and specifications of the defendant.

The determination of the question of whether a person performing work or doing business for another is a contractor for whose negligence the employer is not liable, or a servant for

whose acts the employer is responsible, depends upon a consideration of the contract of employment, the nature of the business and the circumstances under which the parties contracted and the work was being done; and, where such defense is interposed, it cannot be sustained unless the defendant proves the contract under which the work was being done and shows the circumstances and conditions in connection therewith, so that the relation existing between the defendant and the party doing the work may be determined therefrom. One who causes work to be done is not liable ordinarily for injuries that result from carelessness in its performance by the employees of an independent contractor to whom he has let the work without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable, though the negligence is that of an employee of the independent contractor. *Walton* v. *Cherokee Colliery Co.*, 70 W. Va. 48, 73 S. E. 63; *Railroad Co.* v. *Maury*, 47 O. S. 207, 23 N. E. 269, 7 L. R. A. 701. The injury complained of might have been anticipated as a direct and probable consequence of the negligent performance of the work.

(3) That the breaking of the dams, being due to the unfinished condition of the work, neither the defendant nor the independent contractor is liable.

In view of the evidence of greater floods in Mill Branch subsequent to the construction of the original dam; the fact that the construction of the new dam would evidently have required from six to twelve months; that a trench had previously been dug across the center of the old dam to a depth of from 18 inches to 2 feet; that the drainage pipe was not completely opened until the old dam had practically filled with water; and that instead of providing a temporary spillway across the new work for the escape of the overflow, the

dam was dug out at one end, causing necessarily immediate breaking of the new dam and disintegration of the old, through the ditch in the center; the jury was clearly warranted in finding that the defendant had been guilty of negligence in failing to protect the property of the plaintiff from injury by the breaking of the dams.

The defendant complains of several instructions granted on behalf of the plaintiff on the ground that they ignore the defense of independent contractor. Complaint is also made that the court erred in refusing instructions presented by defendant which would have told the jury that the defendant had relieved itself from liability by the employment of contractors of ordinary competence and skill to do the work. As already stated, the trial court in the admission and exclusion of evidence and the granting and refusal of instructions, presented to the jury the question as to whether defendant had exercised proper care in the construction and maintenance of the dams, taking into consideration the evidence as to whether or not the flood causing the injury complained of was unprecedented or usual.

Upon full consideration of the whole case we are clearly of opinion that the verdict of the jury is supported by the proof, and that there is no error in the rulings of the trial court. The judgment is therefore affirmed.

*Affirmed.*