CHARLES W. MAYES, *Administrator, DBN,*
OF SHIRLEY MAYES

*v.*

UNION CARBIDE & CARBON CORPORATION

(No. 10914)

Submitted January 14, 1958. Decided February 18, 1958.

*Love & Abbot, Gordon Billheimer,* for plaintiff in error.

*Mahan, White & Higgins,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Charles W. Mayes, as administrator of the estate of Shirley Mayes, instituted his action in the Circuit Court of Fayette County against defendant, Union Carbide & Carbon Corporation, for damages for the drowning of Shirley Mayes, alleged to have resulted from negligence of defendant. The circuit court sustained a demurrer to the declaration and dismissed the action.

The declaration is in three counts. The first count charges that defendant, at the time of the drowning of Mayes, was the owner and operator of a dam on New River used for impounding and diverting waters from the natural channel of New River, through a tunnel constructed by defendant, for power manufacturing purposes; that the dam was so constructed that by the operation of gates, waters impounded could also be released from the dam into the natural channel of New River; that the dam was constructed and operated by defendant under a license from the State; that defendant "carelessly, willfully, and wantonly * * * raised the gates * * * and permitted the waters of the said New River to spill unhindered into the river bed"; and that Shirley Mayes, "who was then and there lawfully using said stream for game fishing, was struck by great quantities of said water" and drowned. The second count charges further facts to the effect that "the bed of the river below the dam is public property of the State of West Virginia and has from time immemorial been used by the citizens of West Virginia for fishing, bathing and boating"; that defendant had "knowledge that persons commonly used said stream for all manner of recreational purposes"; that it was the duty of defendant

to "warn persons in the stream below said dam" before releasing waters from the dam; that without any warning defendant "caused all or part of said flood gates to be raised", releasing large quantities of waters, and that because of its wanton, careless and negligent conduct, decedent was drowned. The third count, after stating the same facts, in effect, further alleged that, at the time material, defendant, knowing "that high waters were approaching said dam * * * wantonly, negligently, carelessly and willfully waited until said flood waters nearly reached said dam and raised all or part of the gates of said dam in such a manner as to allow said waters to rush unhindered into the gorge" of New River, resulting in the drowning of decedent.

The controlling questions relate to the existence of a duty on the part of defendant in the operation of the dam, and, if any duty, whether a breach thereof by defendant is sufficiently alleged.

Similar questions have been before the Court, though the factual situations appear different. In *Weaver Mercantile Co. v. Thurmond*, 68 W. Va. 530, 70 S.E. 126, the defendant was maintaining a large wooden tank for the purpose of supplying water for a hotel owned by him. The tank burst and water therefrom flowed down a hill into a store of plaintiff, damaging merchandise of plaintiff. The defendant was held liable for the damages. In the opinion, the Court said: "* * * But, as we understand the law to be, the liability of defendant does not depend on negligence in construction, but upon negligence in not keeping the water confined. No matter in what the negligence consisted, it is proved by the bursting of the tank * * * Liability, in cases like the present, rests upon the principle that a man who erects a structure upon his premises which, because of neglect to take care of it, becomes a nuisance, either to the public or to the property of an adjoining owner, is liable. He is bound, at his peril, to prevent it from injuring the property of his neighbor. In 1 Wood on Nuisances, sec. 111, the rule is thus stated: 'Every person who, for his own profit and advantage, brings

upon his premises, and collects and keeps there any thing which, if it escapes, will do damage to another, subject to some exceptions rendered necessary for the protection of industrial interests, is liable for all the consequences of his acts, and is bound at his peril to confine it and keep it in upon his own premises. If he does not, he is answerable for all the damages that result therefrom, without any reference to the degree of care or skill exercised by him in reference thereto. Therefore, if a man brings water upon his premises by artificial means, and collects and keeps it there, either in reservoirs or in pipes, he is bound at his peril to see that the water does not escape, to the damage of an adjoining owner.' "

In *Wigal, Adm'x. v. City of Parkersburg,* 74 W. Va. 25, 81 S. E. 554, two large water tanks maintained by the city burst and permitted water therefrom to flow down a hill, demolishing a dwelling and killing plaintiff's intestate. In an action based on negligence, plaintiff was permitted to recover for the death of plaintiff's decedent. The pertinent holding was: "3. In the absence of proof that the breaking of the tank was caused by some superior force, such as an unusual and violent disturbance of the elements or an explosion clandestinely caused, negligence will be inferred from the breaking."

In *Trump v. Bluefield Water Works & Improvement Company,* 99 W. Va. 425, 129 S. E. 309, the defendant was, at the time of the injury complained of, constructing a superimposed dam across a stream for the purpose of impounding waters for the use of the citizens of Bluefield. The new construction was of such nature as to prevent the full operation of the drain or spillway from the old dam, resulting in flood waters flowing over the dam, damaging plaintiff's premises below. The Court held: "1. One constructing and maintaining a dam across a stream must take into consideration such freshets as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence. (p. 427.) (Waters, 40 Cyc. p. 683.)" In the opinion the Court stated: "* * * the jury was clearly warranted in

finding that the defendant had been guilty of negligence in failing to protect the property of the plaintiff from injury by the breaking of the dams * * * As already stated, the trial court in the admission and exclusion of evidence and the granting and refusal of instructions, presented to the jury the question as to whether defendant had exercised proper care in the construction and maintenance of the dams, taking into consideration the evidence as to whether or not the flood causing the injury complained of was unprecedented or usual." See *Taylor* v. *Chesapeake & Ohio Railway Co.*, 84 W. Va. 442, 100 S. E. 218; *Williams* v. *Columbus Producing Co.*, 80 W. Va. 683, 93 S. E. 809.

It is to be noted that the holdings in the *Weaver Mercantile Co.* case and the *Wigal* case impose on defendants liability regardless of proof of actual negligence, for the reason that persons who, for their own profit, bring onto their premises, and collect and keep there anything, which if it escapes, will do damage to another, are liable for all consequences of their acts, and are bound at their peril to confine it and keep it on their own premises, while the liability of the defendant in the *Trump* case is based on negligence of defendant. A material difference in the facts justifies the different result. In the *Trump* case the defendant had the right, and perhaps a duty in some circumstances, to release waters from the impoundment into the natural channels of a stream, while no such corresponding right existed as to the defendants in the *Weaver Mercantile Co.* case or the *Wigal* case.

In *Winchester Water Works Co.* v. *Holliday*, 241 Ky. 762, 45 S. W. 2d 9, the water company had designed and constructed its dam so that a "temporary flashboard dam" would wash out automatically upon the rising of the waters to a certain height, so as to release surplus waters. Plaintiff was permitted to recover for damages resulting from the breaking of such a dam. The pertinent holding was: "2. Water company, whose flashboard dam broke as it was expected to do during high water, flooding farms below, was liable for resulting damages, regardless of its negligence." In the opinion, the Court said: "In other

words, if a man should set a gun on his premises so constructed as to go off at intervals, and it did go off as designed and kill a horse in the pasture of a neighbor, under the water company's idea of the law, the latter could not recover because the gun had gone off according to design. That cannot be the law.

"The lands of Holliday et al. in this creek valley had upon them the servitude of receiving and enduring the effects of waters naturally gathering and flowing down this creek valley, but the Winchester Water Company as an upper proprietor had no right to gather and impound these waters and then suddenly let them loose upon the lands of these lower proprietors.

"It is not a question of negligence. The sole question is: Did it do so? It admits that it did. Its liability for the damages resulting follows as a matter of law. See Lincoln Coal Co. v. Deaton, 229 Ky. 330, 17 S. W. (2d) 249; Steinke v. North Vernon Lumber Co., 190 Ky. 231, 227 S. W. 274; Ford Lumber & Mfg. Co. v. Clark, 68 S. W. 443, 24 Ky. Law Rep. 318; American Car & Foundry Co. v. Spears, 146 Ky. 736, 143 S. W. 377; 20 R. C. L. pp. 74, 75, 76, §§ 65, 66, 67; 27 R. C. L. p. 1151, § 79, p. 1194, § 111, p. 1099, § 35; 40 Cyc. pp. 647, 683."

In *Georgia Power Co. v. Deese,* Court of Appeals of Georgia, Division No. 1, 78 Ga. App. 704, 51 S. E. 2d 724, a declaration against the power company was held sufficient as against demurrer, as charging liability for the drowning of the husband of Mrs. Deese while fishing below the dam of the power company, in that the manner of the raising of the gates of the dam constituted a breach of ordinary care. The Court said: "* * * Therefore, the duty owed to the deceased after his presence was discovered or was reasonably to be anticipated, whether he be classified as a licensee or trespasser, was to use ordinary care to avoid inflicting injuries on him. It was a question for a jury whether the conduct of defendant's employees constituted a breach of ordinary care, and whether such, under the circumstances,

amounted to wilful and wanton conduct. The fact that the employees did not actually see the deceased at the moment they opened the gate will not relieve them from the duty to exercise ordinary care since a jury could find that they were charged with the duty to anticipate decedent's presence and were still obligated, in the exercise of ordinary care, to determine whether or not deceased was within the range of any danger set in motion by their acts, under the allegations of the petition."

Some of the cases cited, and authorities therein mentioned, disclose considerable authority to the effect that a defendant in such a case as the instant one is liable for damages resulting from the construction or operation of such a dam as involved in the instant case, regardless of negligence, in the absence of proof that the injury resulted from an act of God. We think, however, that the holding of this Court in *Trump* v. *Bluefield Water Works & Improvement Co., supra,* clearly indicates its intention to follow the rule requiring the plaintiff to establish that negligence of defendant constituted the proximate cause of the injury before permitting recovery. The rule seems to apply whether the negligence results from the construction of such a dam, or from the operation of the dam.

From the allegations of the declaration in the instant case, it clearly appears that defendant had proper authority to construct, maintain and operate the dam, including the right to empty waters from the dam into the natural channel of New River. This being true, it could not be held liable for every injury that might result from the release of waters from the dam. It also appears, from such allegations, that plaintiff's decedent had a right to be where he was at the time of being struck by the released waters, but, not being on property owned or controlled by defendant, and not then being engaged in any undertaking for defendant, or at its request, he could not have been a licensee of defendant, or a trespasser on its property. But the duty of defendant

not to negligently operate the dam was not limited to its licensees or to trespassers on its property.

From the allegations of the declaration, we must say that the defendant had knowledge that persons were permitted to fish, and did fish, in the stream below its dam, and was charged with knowledge that the sudden release of large quantities of water from its dam would necessarily expose, endanger or place in peril persons at the time rightfully therein. Clearly, therefore, defendant was under a duty not to negligently operate the dam. Such negligence could arise from the manner of the manipulation of the gates; failure to give warning, in certain circumstances, to persons using the stream below the dam; by permitting waters impounded in the dam to so combine with flood waters as to create an unusual hazard, or in some other manner. As to all such matters, defendant was bound to use ordinary care. Though having the right to construct the dam and empty waters into the channel of New River, it could do neither in a careless and negligent manner, to the injury of others engaged in activities at a point where they had a right to be. See C. J. S., Waters, Sections 148 and 365.

A further contention is to the effect, assuming the existence of primary negligence, that plaintiff's decedent was guilty of contributory negligence, as a matter of law. We think, however, the allegations do not have that effect. A question relating to the effect of allegations contained in a plea in abatement is briefed by defendant, but the question was not decided by the trial court and is not properly before this Court.

The demurrer of defendant to the declaration should have been overruled, the action should not have been dismissed, and the judgment complained of must be reversed.

*Reversed.*