282 F.2d 263
 UNITED STATES of America, Appellant,
v.
MOUNTAIN STATE FABRICATING COMPANY, a corporation; General Storage Company, a corporation, and Keeley Construction Company, a corporation, Appellees.
 No. 8142.
 United States Court of Appeals Fourth Circuit.
 Argued July 25, 1960.
 Decided August 8, 1960.
 Opinion Filed August 23, 1960.
 
 Ronald A. Jacks, Atty., Dept. of Justice, Alexandria, Va. (George Cochran Doub, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., and Albert M. Morgan, U. S. Atty., Fairmont, W. Va., on brief), for appellant.
 James M. Guiher, Clarksburg, W. Va. (Steptoe & Johnson, Clarksburg, W. Va., on brief), for appellee Mountain State Fabricating Co.
 William G. Johnson, Clarksburg, W. Va. (Johnson & Johnson, Clarksburg, W. Va., on brief), for appellee General Storage Co.
 Herschel Rose, Fairmont, W. Va. (J. C. McManaway and H. Laban White, Jr., Clarksburg, W. Va., on brief), for appellee Keeley Const. Co.
 Before SOBELOFF, Chief Judge, and CHESNUT and R. DORSEY WATKINS, District Judges.
 SOBELOFF, Chief Judge.
 
 
 1
 A stock pile of crude rubber belonging to the United States and stored in a warehouse at Clarksburg, West Virginia, was damaged, and all but destroyed,[1] in a fire on July 10, 1952. More than six years later, on October 3, 1958, the Government began an action against two of the defendants, The Mountain State Fabricating Company and General Storage Company.
 
 
 2
 The allegation against the first of these, Mountain State, was that the fire loss was caused by the negligence of its employees in the course of certain welding work which they were doing on the roof of a building under construction contiguous to the building in which the warehouse business was conducted by the other defendant, General Storage Company.
 
 
 3
 Liability of the storage company was asserted upon the alleged breach of its contractual duty as warehouseman. The charge was that General "had failed to store said rubber in accordance with the terms and conditions" of the contract. The complaint stated specifically that the "plaintiff's rubber was unduly exposed to the hazards of fire"; that General was negligent in failing promptly to detect the fire; and upon fire breaking out, defendant General "was unable to extinguish, restrict or control the fire."
 
 
 4
 Later the United States amended its complaint to add a third defendant, Keeley Construction Company, owner of the warehouse building and lessor of General Storage. Liability of Keeley was alleged to arise from its failure to provide adequate fire prevention facilities for the protection of the warehouse and its contents.
 
 
 5
 Keeley also owned the land adjacent to the warehouse building and awarded a contract to Mountain State to do the steel work for the new building. This work was in progress on the day of the fire. The parties are in disagreement as to whether the employees of Mountain State were actually on the roof of the building under construction or on the roof of the warehouse building when the fire was discovered in the rubber stock in the warehouse.
 
 
 6
 After a trial before a jury in November, 1959, extending over ten days, the defendants requested but were denied directed verdicts in their favor. The court charged the jury and requested counsel, if they had any exceptions, to state them on the record and in each instance to give their reasons. The United States Attorney at first announced that the Government had no exceptions, but later withdrew his statement and objected to the court's refusal to grant two of the instructions requested on its behalf. The case was submitted to the jury, which found a verdict in favor of all three defendants.
 
 
 7
 * The Government made no motion at the close of the testimony for a directed verdict, and no motion after the jury's verdict for a new trial under Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., or any motion for judgment notwithstanding the verdict under Rule 50(b).
 
 
 8
 From the judgment entered upon the jury's verdict the United States has filed this appeal. The defendants contend that the unsuccessful plaintiff cannot now complain in the Court of Appeals of any alleged errors which could have been argued in the District Court on a motion for a new trial and that, therefore, no substantial question is presented for review. The defendants point out that a motion for new trial is ordinarily not reviewable on appeal, and they argue from this that the Government, having neglected to make such a motion in the trial court, should not be in any better position here than if such a motion had been made and denied. The trial court's action on a motion for new trial is not normally reviewable, but failure to file such a motion does not forfeit the litigant's right to have reviewed on appeal questions which were properly reserved.
 
 
 9
 We agree with the defendants that the Government's failure to file a motion for a directed verdict or a motion for judgment n. o. v. precludes an examination of the record to determine on this appeal whether the United States was entitled to such directed verdict or judgment. Johnson v. New York, N. H. & H. R. Co., 1952, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77. Such, however, are not the grounds of the present appeal. The Government limits its appeal to the alleged errors of the District Court in excluding, over objection, certain evidence and in denying certain requested instructions to the jury. Such claims of error, we hold, may be examined on this appeal, notwithstanding the plaintiff's failure to file motions for directed verdict, for new trial and for judgment n. o. v. The better practice, however, would have been to have filed such motion and thus have permitted review thereof by the trial court.
 
 II
 
 10
 On the sixth day of the trial, just before resting its case, the Government proffered evidence of an alleged conversation between its witness, J. Dabney Jackson, and an unidentified person at the scene of the fire. The proffer was made out of the presence of the jury, and, upon objection by the defendants, the court ruled the testimony inadmissible. The testimony is as follows:
 
 
 11
 "Q. Whatever happened, you tell the court.
 
 
 12
 "A. Well, the first thing he said to me was, `If I had been a little sooner, I could have saved my torch.' and then — presently — he said, `We had that fire out once,' and that struck me rather forcibly, and I said, `What do you mean you had it out?' He said, `Well, we was up there welding. We noticed the fire down at the rubber and we got a fire extinguisher and put it out. And we couldn't see any more smoke or fire, and by that time it was lunch-time so we took our pails and went to another building and eat our lunch and when we came back it was all afire.' Those were his exact words."
 
 
 13
 The plaintiff's theory is that the court should have allowed this hearsay testimony as a spontaneous declaration. One of the exceptions to the hearsay rule permits the reception of spontaneous declarations made under the stress of excitement produced by a startling event and made before the declarant has had sufficient time to reflect on the effect of the statement. The presumed inherent trustworthiness of utterances made under the stress of excitement is the basis of this generally recognized exception.
 
 
 14
 But the law sets limits to the exception. It does not authorize the reception of statements of persons, whether unidentified or identified, undertaking to give a retrospective recital of events with which the declarant is purportedly familiar. Federal courts are obliged, under Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., to admit all evidence which is admissible under the most favorable rule, whether it be the statutes of the United States or the rules of evidence applied by the courts of the United States before the adoption of the Rule, or the rules of evidence of the state in which the United States court is held. However, neither under the West Virginia cases nor under any other applicable rule of evidence is a declaration qualified for admission which is merely a statement made after the happening of an event and when sufficient time has elapsed for reflection. Such a statement is excludable as hearsay. See: Reynolds v. W. T. Grant Co., 1936, 117 W.Va. 615, 186 S.E. 603; Collins v. Equitable Life Ins. Co., 1940, 122 W.Va. 171, 8 S.E.2d 825, 130 A.L.R. 287; Elswick v. Charleston Transit Co., 1945, 128 W.Va. 241, 36 S.E.2d 419; Gilmore v. Montgomery Ward & Co., 1949, 133 W.Va. 342, 56 S.E. 2d 105; Coates v. Montgomery Ward & Co., 1949, 133 W.Va. 455, 57 S.E.2d 265; 6 Wigmore on Evidence (3rd Ed., 1940), sections 1749 and 1750.
 
 
 15
 Jackson was not offering to repeat the unreflecting expression of another person, made under the excitement of a sudden event. He was offering hearsay of a statement made to him by someone at a considerable interval of time after the event described in the statement.
 
 
 16
 The fact that the fire was still burning when the recital was purportedly made is not determinative of the spontaneity of the declaration. Of dominant importance is the fact that Jackson heard the engines pass his home a mile from the scene of the fire, and he followed the fire truck, helped the firemen for a time, stood around with others while the fire was being fought, and did not meet the declarant till the lapse of a period estimated at the very least as a half hour, perhaps much longer, after Jackson became aware of the fire. And when Jackson first noticed the fire it had already been in progress for some time, and the declarant presumably knew of the fire long before Jackson did. Jackson testified that the declarant spoke calmly and gave him the impression that he was not excited. Taken as a whole, the circumstances indicate that we are dealing here with the narration of a past event, not a spontaneous utterance.
 
 
 17
 In addition, it is worthy of note that Jackson's memory of the events relating to the fire had dimmed with the passage of time. When interrogated as to a number of particulars he gave such answers as, "my mind is hazy," "I don't remember," "it has been quite a long time," "it is hard to say," and "it has been seven years ago." Also while it is true that under West Virginia decisions the name of the declarant need not be known if he is otherwise identified, Gilmore v. Montgomery Ward & Co., 1949, 133 W.Va. 342, 56 S.E.2d 105, here the identification left much to be desired. There were only two workmen who could have made the purported statement, and Jackson's description of the declarant fitted neither of them. Both workmen were present at the trial and testified, but the Government did not seek to elicit from them support for Jackson's testimony. The vagueness of the declaration too, while not itself perhaps a controlling factor on the question of admissibility, does little to establish reliability of the declaration. These features, even if the declaration had been shown to be spontaneous, raise serious doubts as to its admissibility. In any event, as pointed out above, the testimony does not fall within the exception to the hearsay rule.
 
 III
 
 18
 The plaintiff complains of the District Court's refusal of two of its requested instructions. In its brief, the Government states its position with respect to this as follows:
 
 
 19
 "[T]he Government contends that appellee Keeley was liable for the negligence of its independent contractor, Mountain State, whom it had retained to build a new addition to the warehouse in which the rubber was stored. Accordingly, two instructions were presented on this theory of liability."
 
 
 20
 Interpreting the rejected instructions as the Government itself does, both instructions were designed to present a theory of Keeley's liability predicated upon the negligence of its independent contractor, Mountain State. The Government urges that the usual rule insulating an employer from liability for its independent contractor's negligence may not be invoked here, but rather that the exception applies, where the work is of a nature involving a risk of harm unless particular precautions are taken, and hence the employer becomes liable for the contractor's neglect. See: Walton v. Cherokee Colliery Co., 1911, 70 W.Va. 48, 73 S.E. 63; Trump v. Bluefield Waterworks & Improvement Co., 1925, 99 W. Va. 425, 129 S.E. 309; Law v. Phillips, 1952, 136 W.Va. 761, 68 S.E.2d 452, 33 A.L.R.2d 95; Prosser on Torts, section 64. However, we find it unnecessary to discuss whether, under the West Virginia decisions, Keeley would, because of the character of the work performed, be liable for Mountain State's negligence, if such negligence had been found. The issue of Mountain State's negligence was submitted to the jury in the court's charge in a manner not objected to, and the jury absolved that defendant. The basic hypothesis of the instructions, insofar as Keeley's liability is concerned, was thus removed. If it be assumed, for argument's sake only, that the instructions should not have been refused as against Keeley, any error was cured by the verdict in favor of Mountain State.
 
 
 21
 Finding no reversible error, the judgment is
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The parties stipulated that the value of salvaged material was only $10,500 and that if the Government is entitled to recover damages in this case the judgment should be in the amount of $2,335,042.12