LUTHER G. ADKINS, *et al.*

*v.*

THE CITY OF HINTON, A MUNICIPAL CORPORATION

(No. 12353)

Submitted May 11, 1965.                    Decided June 29, 1965.

*W. A. Brown,* for appellant.

*William Sanders, Warren R. McGraw, Joseph G. Martorella,* for appellees.

CAPLAN, JUDGE:

In this civil action, instituted in the Circuit Court of Summers County, the plaintiffs, Luther G. Adkins and Dorothy S. Adkins, husband and wife, seek to recover from the defendant, The City of Hinton, damages for the destruction and loss of certain real and personal property alleged to have been caused by the negligence of the defendant. The complaint was filed in two counts. The first count complained of the negligent conduct of the defendant resulting in damage to the real and personal property of Hayes G. Criddle and Mattie M. Criddle; the second count made a similar complaint in relation to the real and personal property of Luther G. Adkins and Dorothy S. Adkins. Prior to the beginning of the trial the court ruled that these causes of action were not properly joined and required the plaintiffs to indicate which count they would try. The count concerning the Adkins property was selected and the trial proceeded thereon.

At the conclusion of all of the testimony and after the parties had rested the court, on the motion of the plaintiffs, directed the jury to find the defendant city liable as a matter of law and to return a verdict for the plaintiffs in an amount it believed would fully and fairly compensate them for all losses and damages sustained which they had proved by a preponderance of the evidence. Thereupon the jury returned a verdict for Dorothy S. Adkins for damages to her real property in the sum of $7,500.00 and a verdict for Luther G. Adkins, assessing his damages at $500.00 for the loss and damage of his personal property.

It is this action of the trial court of which the defendant complains on this appeal. The defendant asserts that the damage to the property of the plaintiffs was caused by an extraordinary rainfall constituting an act of God; that in such circumstance the defendant city could not be held liable for the resulting damage; and that the question of whether such damage was caused by an act of God was for jury determination rather than by the court.

The following factual situation, as reflected by the evidence, gave rise to this cause of action. In 1930 the defen-

dant, The City of Hinton, established on its property and has since operated an incinerator and refuse dump which has been used for the disposal of garbage, waste, trash and refuse of all sorts. Throughout the years the defendant has dumped or has permitted to be dumped large quantities of refuse on this property, so that a huge mound of debris has built up against the original and natural slope of the bank. According to the testimony of J. W. Stokes, city health officer of Hinton, the area upon which the dump was located was unsatisfactory for that purpose in that it was too steep an incline and formed a hazard from the very beginning. It was to have been used for a period of not more than twenty years and its continued use has emphasized its inadequacy for that purpose. There is an abundance of testimony in the record of this case which reflects the hazardous condition caused by the existence and continued use of this city dump.

The plaintiffs, for approximately twelve years prior to March 12, 1963, resided in a home situated below this city dump property and near Briers Creek, a small stream which runs adjacent to the dump and to their property. The exact distance the plaintiff's property was located from the dump is not readily discernible from the record, but it appears to have been a few hundred yards down the hill therefrom.

On March 11, 1963 this area was subjected to a hard, steady rainfall which continued most of that day and into the night. Several neighbors of the plaintiffs testified that during that rainfall debris from the dump was washed down the bank into the creek. At approximately one-thirty on the morning of March 12, 1963 a huge mound of debris, constituting a sizeable portion of the dump, broke away and slid down into the hollow like an avalanche over and upon the real and personal property of the plaintiffs, thereby destroying and demolishing said property. It is this damage which constituted the basis for this action by the plaintiffs.

It is the plaintiffs' contention that the city's negligence in continuing to use this area as a dump, in the face of frequent and repeated warnings of its hazardous condition,

caused the damage complained of here; that it was well aware of the danger involved to the residents of that neighborhood; that the defendant city failed and refused to take any measures which would materially remedy the situation; and that because of its knowledge of the hazardous condition of the dump, the damage which the plaintiffs suffered was clearly foreseeable.

In addition to its theory that this damage was caused by an act of God, the defendant now invokes the defense of assumption of risk on the part of the plaintiffs. This defense was not pleaded in the defendant's answer and, being an affirmative defense, will not be considered here. Rule 8 (c) of the West Virginia Rules of Civil Procedure provides that in response to a preceding pleading a party shall set forth affirmatively such defenses as are listed therein. The defense of assumption of risk is included in that section.

The principal question to be resolved on this appeal is whether the action of the trial court in directing a verdict for the plaintiffs was proper. Admittedly, the only defense offered to the complaint of the plaintiffs was that the damages complained of therein were caused by an act of 'God. It is necessary, therefore, to consider the evidence adduced at the trial for the purpose of determining whether that defense raised a question which should have been decided by the jury.

The evidence pertinent to this consideration concerns not only the severity of the rainfall on March 11, 1963, but also that relating to the acts or omissions of the defendant in relation to its operation of the city dump. Many witnesses testified that the rainfall during the period in question was steady. Others said that it had rained hard. None, however, related that rain fell in extraordinary quantities or that there was a deluge or flash flood. A witness for the defendant, Charles Hockerman, manager of the Bluestone Project, testified that 2.92 inches of rain had fallen in the eighteen hours prior to the occurrence of the damage to the plaintiffs' property. He further said that such a rainfall could have been foreseen in the springtime. That this was an ordinary heavy rain which frequently fell in the spring

of the year was supported by the testimony of several other witnesses. Furthermore, it is pertinent that the damage to the plaintiffs' property was not caused by water but rather by the mass of debris which broke away from the city dump.

An act of God has been defined as such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected. *State ex rel. Summers* v. *Sims,* 142 W. Va. 640, 97 S. E. 2d 295. In the instant case the evidence falls short of a showing that the rainfall of March 11, 1963 constituted an act of God. There is no evidence of an unprecedented flood of waters or of an extraordinary manifestation of the forces of nature of the character that could not have been anticipated or expected. To the contrary, the strongest testimony revealed that the area in question was subjected to a heavy spring rain. We, therefore, are of the opinion that the defense that the damages were caused by an act of God is without merit.

It is now necessary to consider the evidence in order to determine whether the acts or omissions of the defendant constituted negligence resulting in the damages of which the plaintiffs complain. While the testimony in the record of this case is volumnious, there is little, if any, dispute as to the material facts. It is undisputed, for example, that the existence and continued use of this area for a city dump created a hazard to the adjacent properties and that the defendant was well aware of this condition. Harold B. Eagle, a former mayor of the City of Hinton, testified that as mayor he had been confronted with the problem of the city dump on many occasions. He related that it had been officially discussed frequently and that the city was well aware of the hazard. Discussing the condition of the dump, Mr. Eagle said: "It was felt that probably it might slide into the hollow." He further stated that he had received many complaints from the residents of that area, and that although many studies were undertaken, no material improvements were made.

Many witnesses, some of whom were employed by the city and worked around the dump, testified that much

debris from the dump washed down into Briers Creek whenever it rained; that the dump was settling, causing large cracks to appear therein and portions thereof to break off; and that they had complained and had heard others complain about the dangers created by these conditions. Several members of the city council and former members thereof testified that the dump created a hazard; that the defendant city was aware of such hazard; and that nothing had been done to remedy the unfavorable condition.

Anita Jordan, a former city manager of Hinton, testified that there had been many complaints about debris from the dump and the dangerous condition created thereby. She said the city council knew of the hazardous situation and had authorized her to seek engineering aid for the purpose of eliminating the dangers. However, according to her testimony, no action was ever taken by the city.

W. E. Dressler, a former city councilman, testified that when he was on the council requests had been made at council meetings for that body to take some action to correct the unfavorable conditions existing at the dump. He stated that he had been on a committee to inspect that facility and had reported to council that large cracks had appeared in the mass of debris and that a big rain would cause the whole dump to slide down into the creek. He said that despite the warnings of danger by his committee, the city took no material action.

None of the witnesses who testified on behalf of the defendant denied that the city dump created a hazard. Those who were asked acknowledged that the defendant city was aware of the danger. The only evidence of any action taken by the city was that relating to a new channel which was constructed in an attempt to move the creek away from the dump. It is obvious that this did not have the desired effect.

In view of the abundant testimony, it is clear that the defendant's use and operation of the city dump created a hazard to the people residing in that area. It is also clear that the defendant was well aware of the condition that

existed, but that it failed to take any action to eliminate the danger. In these circumstances the events which occurred in the early morning hours of March 12, 1963, resulting in loss of and damage to the plaintiffs' property, were readily foreseeable. The defendant was on notice that it was operating a potential danger.

It has long been settled law in this jurisdiction that one is answerable for the ordinary and proximate consequences of his negligence, and this liability includes all those consequences which may have arisen from the neglect to make provision for dangers which ordinary skill and foresight are bound to anticipate. *McGraw* v. *B. & O. R. R. Co.*, 18 W. Va. 361. As expressed in 38 Am. Jur., Negligence, Section 59, "The rule is that one is bound to anticipate those consequences of his negligent act or omission which, in the ordinary course of human experience, might reasonably be expected to result therefrom."

In the instant case the defendant city operated a facility which created a constant hazard to those residing in the area thereof. It was well aware of the hazard, having been cautioned on several occasions that a strong possibility existed that the dump would slide down into the hollow. In view of this situation the damages which occurred were plainly foreseeable. The defendant was bound to anticipate the consequences of its failure or refusal to make such improvements as were necessary to eliminate the dangers.

In *Mayes* v. *Union Carbide & Carbon Corporation*, 143 W. Va. 336, 101 S. E. 2d 864, the Court said: "* * * persons who, for their own profit, bring onto their premises, and collect and keep there anything, which if it escapes, will do damage to another, are liable for all consequences of their acts, and are bound at their peril to confine it and keep it on their own premises, * * *." The Court further said that in such circumstances liability exists regardless of proof of actual negligence. See also *Wigal, Adm'r.* v. *City of Parkersburg*, 74 W. Va. 25, 81 S. E. 554; *Trump* v. *Bluefield Water works & Improvement Company*, 99 W. Va. 425, 129 S. E. 309; and *Weaver Mercantile Co.* v. *Thurmond*, 68 W. Va. 530, 70 S. E. 126.

In view of the overwhelming evidence that the defendant city negligently maintained and operated a hazardous facility on its premises and that damages which should have been anticipated resulted therefrom, we are of the opinion, and so hold, that the trial court did not err in directing a verdict for the plaintiffs. This Court, in Point 4 of its Syllabus, in *Vaccaro Brothers & Company* v. *Faris, et als.,* 92 W. Va. 655, 115 S. E. 830, said: "Where the evidence given on behalf of defendant is so clearly insufficient to support a verdict for him that such verdict, if returned by the jury, must be set aside, and the evidence in support of plaintiff's claim is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff."

It is contended by the defendant that the question of whether the damages complained of were caused by an act of God was one for jury determination and not for the court. As heretofore stated, we believe that the evidence failed to support that theory of defense. However, under the evidence in this case, it is clear that even if the rainfall had been of such force that it could be classified as an act of God, the rainfall was not the sole cause of the damages. For an act of God to constitute a valid defense and exonerate one from a claim for damages, it must have been the sole cause, and not just a contributing cause of the injuries or damages sustained. *State ex rel. Summers* v. *Sims,* 142 W. Va. 640, 97 S. E. 2d 295. See also *Riddle* v. *Baltimore & Ohio Railway Co.,* 137 W. Va. 733, 73 S. E. 2d 793; *Mitchell* v. *Virginian Railway Co.,* 116 W. Va. 739, 183 S. E. 35; *Williams* v. *Columbus Producing Co.,* 80 W. Va. 683, 93 S. E. 809; and *Atkinson* v. *Chesapeake & Ohio Railway Co.,* 74 W. Va. 633, 82 S. E. 502. The rainfall, in the instant case, was at most a contributing cause of the damage, the prime cause thereof being the acts or omissions of the defendant city in the negligent maintenance and operation of its refuse disposal facility.

It is a further contention of the defendant that the court erred in instructing the jury that its verdict should be in an amount that would fully and fairly compensate the

plaintiffs for all losses and damages proven by a preponderance of the evidence. It asserts that this instruction does not take into consideration the market value of the real and personal property. In relation to the real property, no objection was made during the trial when testimony concerning its value was adduced. Furthermore, the brief of the defendant contains no argument or reference to the real property. We must assume, therefore, that any objection to the establishment of the value thereof has been abandoned.

Specifically, the defendant asserts that the value of the personal property was not properly established, the only evidence thereof being the value placed on such property by plaintiff Luther G. Adkins. In his testimony plaintiff Adkins listed, item by item, the personalty that was lost or damaged beyond repair. He then stated his opinion of the fair market value of each item. He determined such market value by inquiring about the selling price of such items at various stores in the City of Hinton. Furthermore, he testified that he was a mechanic and had bought, repaired and sold many such items and thereby had some knowledge of their fair market value.

As stated in *Cato* v. *Silling,* 137 W. Va. 694, 73 S. E. 2d 731, the proper measure of damages for the loss or destruction of personal property, other than that which has a peculiar value to its owner, is the fair market value thereof at the time of its loss or destruction. For similar expressions relating to the proper measure of damages for the loss of personal property see *Butler et al.* v. *Smith's Transfer Corp.,* 147 W. Va. 402, 128 S. E. 2d 32; *Mullins* v. *Baker,* 144 W. Va. 92, 107 S. E. 2d 57; and *Stenger* v. *Hope Natural Gas Company,* 139 W. Va. 549, 80 S. E. 2d 889.

In the instant case the plaintiff, Luther G. Adkins, gave his opinion as to the fair market value of each item lost or destroyed. His testimony reveals that his opinion was based upon special knowledge of the items and their value. In the *Butler* case, *supra,* and in the *Stenger* case, *supra,* this Court permitted the fair market value of damaged and destroyed personal property to be established by the testi-

mony of the owners. We adhere to the principles set out in those cases. Certainly, in the circumstances of the instant case, it would be most difficult, if not impossible, to obtain the testimony of one considered an expert, considering the wide variety of items that were destroyed. Then too, plaintiff Adkins placed a value of $985.50 on his personal property and the jury returned a verdict of $500.00 in his favor. We believe that the fair market value of the personal property was properly established for jury consideration. Therefore, the assignment of error with regard to the measure of damages is not well taken.

For the reasons stated herein, and in accordance with the authorities cited, the judgment of the Circuit Court of Summers County is affirmed.

*Affirmed.*