## STUBLEY v. ALLISON REALTY CO. et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

1. MUNICIPAL CORPORATIONS—TORTS—ACTS OF OFFICERS—BUILDING DEPARTMENT.

A city is not liable to a person injured by the collapse of a building in course of erection, though the city building department approved defective plans.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 1568.]

2. SAME—OBSTRUCTION OF STREET—ADJACENT BUILDING.

A city's failure to abate a nuisance, consisting of a building rendering travel on the street unsafe, does not render it liable to a person injured by the collapse of the building while he was in it, and not on the street.

3. NEGLIGENCE—CONDITION OF BUILDING.

The owner of land has a right to erect a building on its land, and is not liable for injuries to others, except in case of negligence, or when the damage is the necessary consequence or sprang from the construction, when the owner is liable for a nuisance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 59.]

4. MASTER AND SERVANT—INJURIES TO THIRD PERSON—INDEPENDENT CONTRACT-
    ORS.
        The owner of land is not liable, in the absence of negligence in selecting
    an independent contractor to erect a building, for injuries caused by his
    negligence.

5. APPEAL—PRESUMPTIONS—WEIGHT OF EVIDENCE.
        Where the defendant offered no evidence, the plaintiff, on appeal from a
    judgment in his favor, is entitled to have his evidence considered in the
    light most favorable to him.

6. NEGLIGENCE—EVIDENCE—SUFFICIENCY.
        In an action for injuries from the collapse of a building in course of
    construction, evidence *held* insufficient to show that the owner was neg-
    ligent in employing contractors, or that the plans adopted were defective,
    or that the owner supervised the construction, so as to render it liable
    for the injuries.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 267.]

Appeal from Trial Term.

Action by Harry Stubley against the Allison Realty Company, the
city of New York, and others. From a judgment dismissing the com-
plaint as to the city, plaintiff appeals; and from a judgment for plain-
tiff and an order denying a new trial, defendant realty company ap-
peals. Affirmed on plaintiff's appeal, and reversed and new trial or-
dered on the defendant realty company's appeal.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-
GRAHAM, LAUGHLIN, and HOUGHTON, JJ.

William N. Cohen, for appellant Stubley.
William J. Moran, for appellant Allison Realty Co.
Theodore Connoly, for respondent.

McLAUGHLIN, J. The Allison Realty Company appeals from a
judgment in favor of the plaintiff, and the plaintiff appeals from a
judgment dismissing the complaint against the city of New York.
The complaint alleges, in substance, that the realty company, at the
time stated, was the owner of a building which was being constructed
on the north side of Forty-Sixth street, about 205 feet east of Sixth
avenue, and was engaged in supervising such construction; that it had
let a contract for the construction of the metal framework of the
building to the defendants Pole and Schwandtner, who at the time
referred to were engaged in carrying out the same; that on the 2d of
March, 1904, the plaintiff, an employé of a third party, to whom the
realty company had let a contract to put in the steam fittings, was at
work in the building, and while thus engaged the building suddenly
and without warning to him collapsed, and he sustained very serious
injuries; that the city of New York was authorized, and it was its
duty, to abate within its limits all nuisances dangerous to the public;
that it had negligently and carelessly permitted the erection of said
building, which was on the day specified, and had been for some time
prior thereto, dangerous and a public nuisance, of which it had knowl-
edge, or by the exercise of reasonable care should have known; that
the collapse of the building and the injuries to the plaintiff were
caused by the negligence and carelessness of the defendants in certain
specified particulars relating to the construction of the building, and

by the further act of the city in allowing such nuisance to continue, and by failing to abate the same after notice of its existence.

It is somewhat difficult to determine from the allegations of the complaint whether the cause of action attempted to be alleged against the city is for negligence or nuisance; but inasmuch as it was contended upon the oral argument of the appeal by plaintiff's counsel, and the same contention is made in the brief presented by him, that it is for a nuisance, I shall, in disposing of the question presented, assume that to be the cause of action alleged. At the trial no proof was offered that the plans and specifications of the building as approved by the building department were defective, or, if so, to such an extent that the construction of the building itself would necessarily result in a nuisance, either public or private. The plans and specifications were not put in evidence, and if they had been, and it had appeared therefrom, or from other evidence, that they were defective, the action of the building department or the officers connected therewith in approving the same would not have rendered the city liable. The building department is not an administrative department of the city. It is a bureau created by statute to perform a public service, in which the city itself has no private interest, and from which it derives no special benefit or advantage in its corporate capacity, and for any neglect, either of omission or commission on the part of the officers connected with such bureau, the city is not liable. Maximilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468; Fire Ins. Co. v. Village of Keeseville, 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667; McGuinness v. Allison Realty Co., 46 Misc. Rep. 8, 93 N. Y. Supp. 267, affirmed 111 App. Div. 926, 97 N. Y. Supp. 1141; Connors v. Mayor, 11 Hun, 439. In Connors v. Mayor, supra, the action was brought against the city to recover damages for injuries sustained by the plaintiff's intestate by the fall of a building. It appeared that the building had been practically consumed by fire, and to such an extent that the walls became unsafe. One of the walls subsequently fell upon the intestate, and so injured her that she died. The court held that the duty of examining the building and structure after the fire was vested in the department of buildings, and that the officers and agents thereof were not the agents of the city, for which reason it was not liable.

But it is contended that the building, by reason of the defective materials used and the methods adopted in construction, was a public nuisance, because it was a menace to persons using the public street upon which it abutted; that this fact was or should have been known to the city, and, since it was obligated to keep the streets in a reasonably safe condition for public travel, it became liable to any person who sustained injuries from the collapse of the building, even though such person was not at such time upon the street. The building at the time of the collapse had reached a height of 120 feet above the street. It stood entirely upon private property. The entrance to it was 5 or 6 feet from the nearest edge of the sidewalk. The street upon which it abutted was between 50 and 60 feet wide, and the sidewalk about 15 feet. If it be assumed that the condition of the structure, immediately preceding its collapse, was such that it did in fact imperil the

safety of persons using the street, I am unable to see upon what prin-
ciple of law the city can be held liable. It did not fall into the street,
and no person therein was injured. The plaintiff was at work in the
building when it fell. The city cannot be held liable for a failure to
pass an ordinance relating to the construction of buildings which would
have prevented the collapse, or, if such had been passed, for a failure
to enforce the same. Landau v. City of New York, 180 N. Y. 48, 72
N. E. 631, 105 Am. St. Rep. 709; Leonard v. City of Hornellsville, 41
App. Div. 106, 58 N. Y. Supp. 266. In Leonard v. City of Hornells-
ville, supra, the plaintiff was injured by a rifle bullet which rebounded
from the target of a shooting gallery abutting on the street. For some
time previous the shooting gallery and target had been in the same
condition and endangered the safety of persons using the street, was
a public nuisance, and was known to the city. It had the power to
abate the nuisance but failed to do so. Says Mr. Justice McLennan:

> "Assuming that the evidence established, as against the defendant city,
> that a nuisance to its knowledge existed upon private property adjacent to a
> public street of such a character as to make it dangerous for persons to go up-
> on or travel over such street, that the city had power to abate such a nuisance,
> that it failed to exercise such power, and that by reason of such failure the
> plaintiff sustained the injury complained of, is the defendant liable?"

The learned justice, after a consideration of numerous authorities
bearing upon the subject, reached the conclusion that the question pro-
pounded should be answered in the negative. He said:

> "The conclusion is reached that a municipality, authorized by its charter or
> by general statute to suppress a nuisance wholly upon private property, is not
> liable to a person who sustains injury by reason thereof, because of the fact
> that such municipality failed to pass an ordinance prohibiting the same, or
> failed to enforce such ordinance if passed, notwithstanding its continuance ren-
> dered travel upon a public street of such municipality dangerous and unsafe."

In James' Adm'r v. Trustees of Harrodsburg, 85 Ky. 191, 3 S. W.
135, 7 Am. St. Rep. 589, the intestate, while traveling upon a public
street, was struck by a stone thrown from adjacent private property
where blasting was carried on, to the knowledge of the officers of the de-
fendant. It was held that the failure of the corporation to provide
the means of abating a nuisance, altogether on private property, or the
omission of its officers to abate it when the means are furnished, gives
no right of action against the corporation to those who are injured
by its neglect of duty.

In Hubbell v. City of Viroqua, 67 Wis. 343, 30 N. W. 847, 58 Am.
Rep. 866, the plaintiff, while traveling upon a public street, was in-
jured by a bullet fired from a tent located on private property. It
was held that a recovery could not be had; the court saying:

> "Persons erecting such structures near a public highway, if they erect or
> maintain them in such manner as to interfere with the safety of persons travel-
> ing such highway, may be answerable for any damage caused by the existence
> of such structures to persons traveling such highway; but they do not consti-
> tute an insufficiency of the highway itself, within the meaning of the statute,
> so as to render the town, city, or village in which they are situated liable for
> the damage caused by their existence."

In Cain v. City of Syracuse, 95 N. Y. 83, it was held that, not-
withstanding the city by its charter had power to demolish walls of

buildings within its limits which had become dangerous by reason of fire, its failure to exercise such power, by reason of which plaintiff, who was in an adjoining building, and not upon the street, was injured, did not make the city liable. The city, of course, is obligated to keep its public streets in a reasonably safe condition for public travel. Its obligation, however, in this respect, is to persons using such streets, and not to those engaged in a private enterprise upon private property. Here the plaintiff, while he may have used the street in going to and from the building, was not in it at the time the building collapsed and he was injured.

It is a somewhat startling proposition, and to which I am not ready to assent, in the absence of controlling authority on the subject, that because a building in the course of erection by a private person, entirely upon private property, may fall, and by reason thereof possibly be a menace to persons using the public streets, the municipality thereupon becomes liable to respond in damages for the injuries sustained by persons at work in the building at the time it falls. My conclusion is that the complaint against the city was properly dismissed, and that the judgment to that effect should be affirmed.

The appeal of the Allison Realty Company presents a somewhat different question. It was the owner of the real estate, and had entered into a contract with the defendants Pole & Schwandtner for the construction of the metal framework of the building. It had a right to construct a building upon its own land, and in doing so did not subject itself to liability for damage to others, except upon the theory of negligence, unless such damage was the necessary consequence of or sprang from the construction itself, in which case it might be held liable for a nuisance. Bohan v. P. J. G. L. Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711; McKeon v. See, 51 N. Y. 300, 10 Am. Rep. 659. Having the right to construct the building, it could do so itself or through an independent contractor, and if it chose the latter it could not be made liable for his negligence, providing it was free from negligence in making the selection. It is well settled that where an owner of real estate employs a competent contractor to erect a building thereon, and exercises due care in providing him with suitable plans and specifications for the construction, and assumes no control or supervision over the work, he is not liable for the negligence of the contractor, either in the selection of the materials or the execution of the work itself. Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914; Hexamer v. Webb, 101 N. Y. 377, 4 N. E. 755, 54 Am. Rep. 703. If, however, the construction of the building itself were a nuisance, then he could be held liable, irrespective of the contractors' negligence; and this upon the theory that one who participates in the creation of a nuisance, or in maintaining it, does an unlawful act, and, if damage be sustained in consequence, then liability attaches. Ahern v. Steele, 115 N. Y. 203, 22 N. E. 193, 5 L. R. A. 449, 12 Am. St. Rep. 778; Finkelstein v. Huner, 77 App. Div. 424, 79 N. Y. Supp. 334, affirmed 179 N. Y. 548, 71 N. E. 1130; Uggla v. Brokaw, 117 App. Div. 586, 102 N. Y. Supp. 857.

Here, as in the complaint against the city, the plaintiff contends that the action is to recover damages for a nuisance, and not for negli-

gence. The conclusion at which I have arrived renders it unnecessary to determine whether the contention is well founded or not, because in either case I do not see how the judgment can be sustained. At the trial no proof was offered on behalf of the realty company, and the plaintiff is entitled to have the evidence presented in his behalf considered in the light most favorable to him, and every material fact which such proof tends to establish, or which can legitimately be inferred therefrom, must be deemed established in his favor. Giving to the plaintiff the benefit of this rule, I do not think the proof set out in the record before us established a cause of action in his favor against the realty company. No proof was offered that the contractors were not thoroughly competent to do the work which they undertook. Neither the plans and specifications for the building, nor the contract of the realty company with the contractors, was introduced in evidence, so that it is impossible to determine what the plans and specifications or the terms of the contract were. It did appear, however, from plaintiff's witness Parsons, that in his opinion the building collapsed because "it was so joined together that it has no lateral support from the structure itself. The effect of this fault in the design was to make the columns act as long columns." But his testimony was not based upon any information which he derived from a study of the plans, and he admitted that this, was a common method of construction. Plaintiff's witness French, an inspector in the building department, testified:

"I examined the plans at the start-off of the building. They were filed in the office. * * * Those plans were at that time on file in the office of the building department. I noticed no particular defects, simply what is generally noted in all buildings in the course of their erection, such as bolting, etc."

Just what the witness meant by the use of the words, "such as bolting, etc." is not apparent; but it is clear that he referred, not to the plans, but to the work of construction. This witness also testified, as did another, that the plans and specifications had been approved by the building department. This constitutes substantially all the proof which was offered as to the plans and specifications, and it rebuts, rather than warrants, a conclusion that they were defective.

The complaint alleged that the realty company, notwithstanding it had let a contract for the construction of the building, supervised its construction. No proof whatever was offered tending to establish this allegation. The foreman employed by the contractors gave the only evidence bearing on the subject, and this was:

"Both Mr. Pole and Mr. Schwandtner were on the building at that time off and on through the week. This is also true of Mr. Allison."

Who Mr. Allison is does not appear; nor does it appear that he was in any way connected with the Allison Realty Company, or that he ever assumed to direct or superintend the erection of the building. Simply because a person happens to have a name which corresponds in part to the name of a corporation falls far short of establishing that such person is an officer of the corporation, or is authorized to or can bind it by any act of his. No proof was offered that the contractors were incompetent, or that the realty company did not exercise due care in entering into the contract; nor was any proof offered to

the effect that the realty company or any one else considered the building unsafe, except that it did appear that a short time before the building collapsed it was noticed by the contractors, or some of the persons in their employ, to be out of plumb, and was immediately drawn back into plumb; but it did not appear that the realty company ever had knowledge of this fact.

At the close of the trial, therefore, the evidence tended to establish, so far as the realty company was concerned, the following facts: That the plaintiff was injured while at work on the building, by reason of its collapse; that the building was being constructed by independent contractors, who, so far as appears, were competent; that the plans and specifications for the construction of the building had been approved by the building department of the city, and no defects appeared therein; that the realty company did not superintend the erection of the building or exercise any control over the contractors, nor did it have any knowledge that prior to its collapse it was in a dangerous condition or liable to fall. Under such circumstances I do not think a cause of action was proved against the realty company, and the finding of the jury to the contrary is against the evidence. If the owner had been constructing the building itself, or superintending the construction, then it is possible that it would be liable under the rule, "res ipsa loquitur." Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630. But when it appeared that the building was being constructed by independent contractors, over whom the owner had no control, that rule, as against the owner, did not apply. Cross v. Koster, 17 App. Div. 402, 45 N. Y. Supp. 215; Hexamer v. Webb, supra.

I am of the opinion, therefore, that the judgment dismissing the complaint, so far as the city is concerned, should be affirmed, with costs, and the judgment against the realty company and the order denying a motion for a new trial should be reversed, with costs to it to abide the event of the action.

INGRAHAM, LAUGHLIN, and HOUGHTON, JJ., concur. PATTERSON, P. J., concurs in the opinion so far as it relates to the city, and in the result as to the Allison Realty Company.