109 N.J. Super. 249 (1970)
262 A.2d 920
PETER FIDUCCIA AND BARBARA FIDUCCIA, PLAINTIFFS,
v.
SUMMIT HILL CONSTRUCTION CO., INC., A CORPORATION OF NEW JERSEY AND THE BOROUGH OF ROSELAND, DEFENDANTS.
Superior Court of New Jersey, District Court Essex County.
Decided March 4, 1970.
Mr. Francis W. Donahue appeared for plaintiffs (Messrs. Rubin, Dolgoff & Sussman, attorneys).
Mr. Norman A. Doyle appeared for defendants (Mr. Thomas E. Durkin, attorney).
YANOFF, J.D.C.
The problem raised on this motion to dismiss count II of the complaint for failure to state a claim upon which relief can be granted pursuant to R. 4:6-2(a) *250 and 6:3-1 is whether, as a matter of law, a municipality may be held liable to a landowner for negligence in granting a certificate of occupancy.
The background facts are that defendant Summit Hill Construction Co., Inc. built a home for plaintiff for which the municipality issued a certificate of occupancy. The howeowner now complains that the builder improperly graded the land and failed in other respects to construct the home properly, and sues both builder and municipality. The municipality is charged with negligence in the issuance of the certificate of occupancy.
Viewed analytically, it is possible to build a chain of logic under which plaintiff might prevail. If the scope of duty is determined by whether "it was within the realm of foreseeability that some harm might result," Hartman v. Brigantine, 42 N.J. Super. 247, 262 (App. Div. 1956), aff'd 23 N.J. 530 (1957); Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129 (App. Div. 1960), and if the foreseeability of harm may be considered as a matter of hindsight, see Mitchell v. Friedman, 11 N.J. Super. 344 (App. Div. 1951), there is a question here for the trier of fact. Certainly it was foreseeable that a landowner might rely upon the certificate of occupancy, and that if the certificate of occupancy were negligently issued, a landowner so relying might suffer damage. On such analysis the breach of obligation of due care, and the chain of causation, would be satisfied. But as the cases have made clear, the consequences of the application of such a chain of logic may require limitation as a matter of policy. In Goldberg v. Housing Authority of Newark, 38 N.J. 578 (1962), Chief Justice Weintraub, in a decision holding a municipal housing authority under no duty to provide police protection in a housing project, said:
The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to guard against it. Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the *251 nature of the risk, and the public interest in the proposed solution. [at 583]
To the same effect, are the remarks of Justice Hall in Caputzal v. Lindsay Co., 48 N.J. 69, 75 (1966).
The basic question was discussed in detail in Seidel v. Greenberg, 108 N.J. Super. 248 (Law Div. 1969). There it was said:
The existence of "causation in fact" having been established, the problems of "proximate cause," "foreseeability," "duty," "intervening cause" and the like are presented. In the last analysis, they resolve themselves down to problems, not simply of factual causation, but rather of policy, justice and fairness. [at 259]
The complaint states the case against the municipality as if it were a private individual, without charging active wrongdoing or specifying the position in the municipal chain of command of the officer who issued the certificate.
In the light of Hayden v. Curley, 34 N.J. 420 (1961), and Cloyes v. Delaware Tp., 23 N.J. 324 (1957), I doubt that dismissing count II for failure to allege active wrongdoing is warranted.
In Hayden, the jury involved was caused by the natural growth of a tree. The court said:
To constitute `active wrongdoing' a municipality's injury-conflicting conduct must consist of something more than a negligent failure or omission to act. [at 424]
The court, nevertheless, held that
By planting the tree, the city affirmatively created an obstruction in the public way. The jury could find it was reasonable [sic] foreseeable at the time of the planting that the tree in the course of its natural growth, which includes the growth and spreading of its roots, would probably disrupt the alignment of the sidewalk. Put another way, a jury could find it was reasonably foreseeable that the tree, if not properly inspected and maintained, would so affect the surrounding sidewalk as to develop from a potential to an actual public nuisance. [at p. 427]
*252 In Cloyes, Chief Justice Weintraub, 23 N.J., at 330, pointed out that whether wrongdoing is active or passive often depends upon a choice of point of view; that wrongful conduct viewed from one aspect may be deemed passive, and from another, active. Not since Boyle v. County of Hudson, 8 N.J. 294 (1951), has a suit against a municipality been lost on the ground that the liablity-creating contract was not active. In Hartman v. Brigantine, 23 N.J. 530 (1957), the court said:
And the more recent cases have displayed a just readiness in finding that the negligent conduct of the defendant municipality in the maintenance and care of the highway included affirmative action which would support a jury determination of active wrongdoing. [at 533]
It may, therefore, be inferred that, given the right to amend, the ingenuity of counsel would not be beyond phrasing the negligence of the municipality in terms of acts of commission rather than omission.
The rank of the person who issued the occupancy permit in the municipal hierarchy is of no significance so long as he had authority.
In McAndrew v. Mularchuk, 33 N.J. 172 (1960), it was held:
Where negligent acts of commission form the basis of the claim against a municipal corporation, the issue of obligation to respond in damages shall be determined on general principles of respondeat superior. [at p. 193]
That issuance of the certificate was authorized cannot be doubted.
The basic question, therefore, is whether this is the kind of activity for which a municipality should be held responsible under ordinary principles of tort liability. Clearly, there are areas in which governmental activities involve questions of discretion and judgment for which, in the absence of bad faith, corruption, oppressive conduct, or *253 other abuse of power, there is immunity from tort liability. In Amelchenko v. Freehold, 42 N.J. 541 (1964), a municipality was held not responsible for its policy determination that snow be removed from other public areas before removal from a parking lot. In Hoy v. Capelli, 48 N.J. 81 (1966), a municipality was exonerated from liability because it had removed a traffic light from an intersection. In Visidor Corp. v. Cliffside Park, 48 N.J. 214 (1966), cert. den. 386 U.S. 972, 87 S.Ct. 1166, 18 L.Ed.2d 132 (1967), it was held that a municipality was not responsible in tort because it had illegally designated a one-way street. See also Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 31 N.J. 124 (1959).
In B.W. King, Inc. v. West New York, 49 N.J. 318 (1967), it was held that a municipality might be liable where it operated a pier in its proprietary capacity. Nevertheless, the court, in considering which municipal activity would be immune from tort liability, said:
The analytical approach ought not to be one of asking why immunity should not apply in a given situation but rather one of asking whether there is any reason why it should apply. [at 325]
Nevertheless in Miehl v. Darpino, 53 N.J. 49 (1968), the Supreme Court held that as a matter of policy a municipality should not be held liable for injuries caused by the presence of a pile of snow created in connection with snow removal.
The line at which governmental activity becomes immune is not readily defined. In 2 Harper & James, Law of Torts, § 29.3, at 1612 (1956), it is said:
On the other hand, no one today urges that a judicial remedy be given for all the injuries that may result from mistaken governmental action, * * *.
And, at 1642:
The American rule today, then, is that judicial, legislative, and administrative officers are not generally liable for injurious consequences *254 of discretionary action or nonaction. And the tendency has been to define the concept of discretionary or quasi-judicial action broadly in favor of immunity.
Cases showing the divergence of view on the subject are collected in 60 A.L.R.2d 1198 (1958). See also Prosser on Torts (3d Ed. 1964) p. 1006.
For the view that immunity should be confined to the planning level see Hink and Schacter; "American Governmental Tort Liability," 20 Rutgers Law Review 710, at 753 (1965-66)
Municipal power to issue the certificate is created by N.J.S. 40:48-1(13) which gives a municipality power to:
Regulate and control the construction, erection, alteration and repair of buildings and structures of every kind within the municipality * * *
In this case, the ordinance of defendant, municipality, provides:
2 (a) Certificate of Occupancy. No building hereafter altered or erected shall be used or changed in use until a Certificate of Occupancy shall have been issued by the Building Inspector stating that the building and the proposed use thereof complies with all other applicable ordinances of the Borough.
In Honigfeld v. Byrnes, 14 N.J. 600 (1954), the Court said:
But a certificate of occupancy is merely a tangible manifestation of proper use of one's property in accordance with the ordinance in question. Before it can issue, the building inspector is obliged to view and examine the premises to determine conformity with all appropriate regulations * * * [at 608]
To the same effect: Union County v. Benesch, 98 N.J. Super. 167, 177 (Law Div. 1967), mod. 103 N.J. Super. 119 (App. Div. 1968)
In my view, this is the kind of case where there should be municipal immunity. While issuance of a certificate of *255 occupancy does not involve planning or policy functions, it does entail the exercise of discretion. Not only must the building inspector determine whether there has been compliance with building regulations and health regulations, but whether the structure complies with the requirements of the zoning ordinance. The books are replete with zoning cases which demonstrate that this can be a task requiring considerable skill. The building inspector does more than mechanically apply existing regulations; he must often exercise judgment in difficult areas. While it can hardly be said that his powers are quasi-judicial, it seems improper to expose a municipality to the possibility of tort liability for errors in the exercising of such judgment, particularly since it is now responsible for the acts of all of its agents.
Another consideration is that, as we have seen (e.g. Honigfeld, supra; Union County, supra) the certificate of occupancy is merely a testimonial that the property is being used in compliance with applicable ordinances. It is issued for the protection of the municipality as a whole, not for the benefit of the landowner. Doubtless, the building inspector must use due care in the performance of his functions, but his obligation is to see to it that there has been no violation of municipal ordinances, not to insure that the building has been constructed in such manner as to protect the landowner. If, incidentally, the landowner benefits from the activities of the building inspector, this does not give him the right to rely upon the certificate of occupancy for proof of proper construction.
For this, the landowner should  and traditionally has  protected himself by contract.
There is nothing in the enabling statute or the ordinance to indicate that there is an intent to protect the landowner against failure of the building contractor to perform properly, or an assumption by the municipality of such an obligation.
In the few cases where the problem has arisen, the municipality has prevailed. In City of Tyler v. Ingram, 139 *256 Tex. 600, 164 S.W.2d 516 (Tex. Sup. Ct. 1942) it was held that:
"A municipality is not liable for the negligence of a building inspector in the performance of his duties; because such duties are governmental functions. McQuillin-Municipal Corporation, Vo. 6, p. 1172 Sec. 2842; Valenti v. Mosholu Housing Corporation, 164 Misc. 788, 299 N.Y.S. 590; Stubley v. Allison Realty Co., 124 App. Div. 162, 108 N.Y.S. 759; Lindemann v. City of Kenosha, 206 Wis. 364, 240 N.W. 373." [164 S.W.2d, at 519].
Accord: Stubley v. Allison Realty Co., 124 App. Div. 162, 108 N.Y.S. 759 (App. Div. 1908)
In the analogous situation of liability of a municipality for issuance of a building permit, it has been held that a municipality is not liable for negligence. 9 McQuillin: Municipal Corporations (3 ed. 1964), § 26.200, p. 524, and cases cited at footnote 69.
Count II of the complaint will, therefore, be dismissed.