380 S.E.2d 36

**Dallas L. BENSON and Rebecca M. Benson, etc., Plaintiffs Below Appellants,**

v.

**Patricia Valentino KUTSCH, et al. Defendants Below, The City of Wheeling, Appellee.**

No. 18223.

Supreme Court of Appeals of West Virginia.

March 28, 1989.

James E. Seibert, Linda W. Curtis, Seibert, Kasserman, Karnsworth, Gillenwater, Glauser & Richardson, for Dallas Benson and Rebecca Benson.

Paul T. Tucker, Bachmann, Hess, Bachmann & Garden, Wheeling, for defendant/appellee.

Jeffrey A. Holmstrand, John B. Garden, Bachmann, Hess, Bachman and Garden, Wheeling, for City of Wheeling.

MILLER, Justice:

Dallas Benson and Rebecca M. Benson, his wife, the plaintiffs below, appeal the dismissal of their case upon a motion for summary judgment. The Circuit Court of Ohio County concluded that they had failed to assert a valid cause of action against the City of Wheeling. The plaintiffs argued that the City is liable for damages allegedly resulting from its failure to inspect the apartment occupied by the plaintiffs for compliance with the city building code. We disagree, and we affirm the judgment of the circuit court.

The plaintiffs lived in an apartment building in Wheeling. On October 18,

1981, Mr. Benson was seriously injured when a fire broke out in their apartment.

The plaintiffs subsequently sued the owner of the building, Patricia Valentino Kutsch,[1] and the City of Wheeling for damages, alleging that if their apartment had been equipped with a smoke detector, as required by the City's Building and Housing Code,[2] Mr. Benson would not have been injured. In particular, the plaintiffs alleged that the City was negligent in failing to conduct an inspection of the premises which would have revealed the building code violation.[3]

The City filed a motion for summary judgment on the ground that the complaint failed to state a cause of action against it. By order dated March 10, 1987, the trial court granted the motion on the ground that the enactment of a fire and building code by the City did not create a duty to the individual plaintiffs to inspect their apartment for possible code violations.

## I.

## PUBLIC DUTY DOCTRINE

We have not had occasion to address specifically the question of whether a municipality may be held liable for the failure of its employees to inspect premises to determine if there are violations of fire or building codes.[4] We observe initially that the plaintiffs do not point to any language in the housing code that imposes a positive duty on the City to make regular inspections or that creates a cause of action in favor of one injured by the failure to inspect or by a negligent inspection.[5]

The public duty doctrine is a principle independent of the doctrine of governmental immunity, although in practice it achieves much the same result. It had its origins in this country in *South v. Maryland*, 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1855), where a kidnapping victim sued the sheriff, claiming that the sheriff knew he had been kidnapped and where he was detained, but did nothing to secure his release. The Supreme Court, relying on English authorities, found no liability and concluded that a sheriff's duty to enforce the law was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." 59 U.S. (18 How.) at 403, 15 L.Ed. at 435.[6] This

1. Ms. Kutsch has since settled with the plaintiffs and is not involved in this appeal.

2. According to the briefs of the parties, the City had adopted the Standard Building Code, Section 1127 of which provided:

"Every dwelling and every dwelling unit within an apartment house ... shall be provided with an approved listed smoke detector, installed in accordance with the manufacturer's recommendation and listing. When activated, the detector shall provide an audible alarm. This smoke detector shall be tested in accordance with and meet the requirements of U.L. 217, Single and Multiple Station Smoke Detectors."

3. It appears that in April, 1981, a city building inspector had inspected the outside of the building, but not the apartments inside.

4. Obviously, as a threshold inquiry, a determination would have to be made that the municipality does not have any immunity from such suit. We abolished governmental immunity for municipalities in *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975). Because the accident occurred prior to the adoption of The Governmental Tort Claims and Insurance Re-

form Act, W.Va.Code, 29–12A-1, *et seq.* (1986), no claim is made that this act applies. *See* Note, *Tort Reform: The Reemergence of Local Government Immunity,* 89 W.Va.L.Rev. 466 (1987).

5. The plaintiffs rely on the job description of the housing inspector:

"*Purpose: Public Safety, Public Health.* To assure that dwelling units within the City are in compliance with the City Code, in order to protect the occupants from health and safety hazards.

"*Major Activities:* Conduct thorough inspections of dwellings; conduct reinspections relative to the abatement of violations; investigate complaints relative to the House Code and Zoning Ordinance; conduct inspections for low-interest loans."

However, this is an administrative document separate from the City Building and Housing Code. We do not consider it to form the basis of a specific duty in favor of the plaintiffs.

6. For commentary on the public duty doctrine, *see* G. Sellers, *State Tort Liability for Negligent Fire Inspection,* 13 Colum. J.L. & Soc. Probs. 303 (1977); Comment, *Municipal Liability: The Failure to Provide Adequate Police Protection—The*

rule subsequently evolved into the public duty doctrine which, simply stated, is that a governmental entity is not liable because of its failure to enforce regulatory or penal statutes.

The rationale for the doctrine lies in the inherent difficulty in determining what general responsibilities of a public agency should give rise to a cause of action. Implicit in this inquiry is the recognition that it is impractical to require a public official to be responsible for every infraction of regulatory legislation that requires inspection or enforcement from his office. There is the added principle that the government should be able to enact laws for the protection of the public without thereby exposing the taxpayers to liability for omissions in its attempts to enforce them. *Rich v. City of Mobile,* 410 So.2d 385 (Ala.1982); *Grogan v. Commonwealth,* 577 S.W.2d 4 (Ky.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979); *O'Connor v. City of New York,* 58 N.Y.2d 184, 460 N.Y.S.2d 485, 447 N.E.2d 33 (1983). Thus, a general duty is not thought to give rise to a cause of action unless the ordinance imposes some specific liability for the failure to enforce it.

Plaintiffs point to several jurisdictions that have rejected the public duty doctrine and have held that a general statutory duty, if breached, may give rise to a cause of action. *E.g., Adams v. State,* 555 P.2d 235 (Alaska 1976);[7] *Ryan v. State,* 134 Ariz. 308, 656 P.2d 597 (1982); *Coffey v.*

*City of Milwaukee,* 74 Wis.2d 526, 247 N.W.2d 132 (1976). However, it appears that in these jurisdictions there are limits on the right to sue.

In *Ryan v. State, supra,* the state was held liable when an inmate escaped from a youth center and shot Mr. Ryan during the course of a robbery. The Supreme Court of Arizona rejected the public duty doctrine, but not without some qualifications. The court recognized judicial and legislative immunity and left open the scope of immunity as to executive employees, stating that "with officers and employees making plans and decisions which set the course of government, we do not feel it appropriate to define the limited parameters of immunity in abstract.... [They will be defined] as they come before us." 134 Ariz. at 311, 656 P.2d at 600. The court concluded with this statement, recognizing judicially-created governmental immunity in appropriate cases:

"Employing the spirit of the [*Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 381 P.2d 107 (1963)] decision, we propose to endorse the use of governmental immunity as a defense only when its application is necessary to avoid a severe hampering of a governmental function or thwarting of established public policy. Otherwise, the state and its agents will be subject to the same tort law as private citizens." 134 Ariz. at 311, 656 P.2d at 600.[8]

The Wisconsin Supreme Court in *Coffey* found a city building inspector liable for

---

*Special Duty Doctrine Should Be Discarded,* 1984 Wis.L.Rev. 499; Comment, *The Special Duty Doctrine: A Just Compromise,* 31 St. Louis U.L.J. 409 (1987). *See generally* Annot., *Failure to Restrain Drunk Driver As Ground of Liability of State or Local Government Unit or Officer,* 48 A.L.R.4th 320 (1986); Annot., *Governmental Tort Liability for Failure to Provide Police Protection to Specifically Threatened Crime Victim,* 46 A.L.R.4th 948 (1986); Annot., *State's Liability to One Injured by Improperly Licensed Driver,* 41 A.L.R.4th 111 (1985); Annot., *Liability of Governmental Entity To Builder or Developer for Negligent Issuance of Building Permit Subsequently Suspended or Revoked,* 41 A.L.R.4th 99 (1985); Annot., *Liability for Police Failure to Respond to Emergency Call,* 39 A.L.R.4th 691 (1985); Annot., *Modern Status of Public Duty Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particu-*

*lar, Duty was Owed Under Circumstances,* 38 A.L.R.4th 1194 (1985).

7. We note that the *Adams* case has been abrogated by statute, as the Supreme Court of Alaska acknowledged in *Wilson v. Municipality of Anchorage,* 669 P.2d 569 (Alaska 1983).

8. The Supreme Court of Arizona reaffirmed *Ryan* in *Austin v. City of Scottsdale,* 140 Ariz. 579, 684 P.2d 151 (1984), where the city was found liable for the death of an individual when the police department failed to act on an anonymous call which communicated the fact that his life was in danger. The Arizona Court of Appeals has followed *Ryan* to find municipal liability for negligent building inspection, *Brown v. Syson,* 135 Ariz. 567, 663 P.2d 251 (1983), and for failure to insure code compliance before issuing a permit, *Bischofshausen v. Pinal–Gila Counties,* 138 Ariz. 109, 673 P.2d 307 (1983).

negligently failing to discover that the standpipes for fire hoses located in a building were defective. As a result, when the building caught fire, there was insufficient water to extinguish it. In rejecting the public duty defense and any "special duty" theory, the court made the broad conclusion that "[a]ny duty owed to the public generally is a duty owed to individual members of the public." 74 Wis.2d at 540, 247 N.W.2d at 139.[9] The court did, however, leave a broad qualification, termed its "public policy exception," by which "the imposition of liability did not always flow from a finding of negligence and cause-in-fact[.]" 74 Wis.2d at 541, 247 N.W.2d at 139.[10] This public policy exception would appear to be sufficiently broad that it can be applied in almost any situation to avoid imposition of liability.

In summary, in rejecting the public duty defense, the Arizona and Wisconsin Supreme Courts suggest that a governmental entity's breach of a duty to the general public may give rise to a cause of action. This broader exposure to liability is tempered by these courts' statements that public policy may require interposing a rule of nonliability in a given case.

In *Leake v. Cain*, 720 P.2d 152 (Colo. 1986) (en banc), the Supreme Court of Colorado concluded that the public duty defense was equivalent to a form of governmental immunity and should be rejected, but recognized that not every public duty should result in liability. The court refused to find that a statute providing for emergency commitment of inebriates created a cause of action against a police officer for injuries to the plaintiff caused by a drunk driver, who was released by the officer into the custody of another. The court appears to have followed the special relationship rule discussed in Part II, *infra:* "Where a person should reasonably foresee that his act, or failure to act, will involve an unreasonable risk of harm to another, there is a duty to avoid such harm." 720 P.2d at 160. (Citations omitted).[11] It concluded that the statute was designed to protect the inebriate and not the injured plaintiff, even though the language of the statute indicated that protective custody was required where the inebriate was "clearly dangerous to the health and safety of himself or others." Colo.Rev.Stat. § 25-1-310(1) (1982). The court in *Leake* also held that the officer's decision to release the inebriate was a discretionary act and, as a consequence, enjoyed a qualified immunity.[12]

The result in *Leake* is not novel when it is considered that the public duty theory

---

**9.** *Coffey*'s principle was reaffirmed in *Wood v. Milin*, 134 Wis.2d 279, 397 N.W.2d 479 (1986), which found a city building inspector liable for negligently failing to enforce provisions of the building code, resulting in partial collapse of a house.

**10.** *Coffey*'s test for imposing the public policy exception of nonliability was:

"(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." 74 Wis.2d at 541, 247 N.W.2d at 140. (Citations omitted).

**11.** This rule is essentially taken from Section 303 of the Restatement (Second) of Torts (1965): "An act is negligent if the actor intends it to affect, or realizes or should realize that it is likely to affect, the conduct of another, a third person, or an animal in such a manner as to create an unreasonable risk of harm to the other." *See generally Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987); *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983).

**12.** We have also recognized this theory in Syllabus Point 5 of *City of Fairmont v. Hawkins*, 172 W.Va. 240, 304 S.E.2d 824 (1983):

" 'Where the duties imposed upon a public officer are positive and ministerial only and involve no discretion on his part, he is liable to any one injured by his nonperformance or his negligence performance thereof, and this without regard to his motive or any question involving corruption in office; and whether he has properly discharged his duties in the premises is generally a question of fact for the jury on the evidence adduced before them.' Syllabus Point 4, *Clark v. Kelly*, 101 W.Va. 650, 133 S.E. 365 (1926)."

A somewhat similar rule was recognized arising out of litigation pursuant to 42 U.S.C. § 1983 in *Bennett v. Coffman*, 178 W.Va. 500, 361 S.E.2d

creates no duty. Therefore, the rejection of the doctrine does nothing more than to require the plaintiff to show a viable cause of action against the city and its officials. Thus, we believe that Colorado, despite its suggestion of creating a broader form of public liability, actually falls within those cases that recognize that a special relationship will support governmental liability.

Most jurisdictions conclude that a municipality may not be held liable because of the failure of its employees to inspect premises to determine if there are violations of fire or building codes. *E.g., Rich v. City of Mobile, supra; Trianon Park Condominium Ass'n v. City of Hialeah,* 468 So.2d 912 (Fla.1985); *Leger v. Kelley,* 142 Conn. 585, 116 A.2d 429 (1955); *Stigler v. City of Chicago,* 48 Ill.2d 20, 268 N.E.2d 26 (1971); *Grogan v. Commonwealth, supra; E. Eyring & Sons Co. v. City of Baltimore,* 253 Md. 380, 252 A.2d 824 (1969); *Dinsky v. Town of Framingham,* 386 Mass. 801, 438 N.E.2d 51 (1982); *Stemen v. Coffman,* 92 Mich.App. 595, 285 N.W.2d 305 (1979); *Hoffert v. Owatonna Inn Towne Motel, Inc.,* 293 Minn. 220, 199 N.W.2d 158 (1972); *Fiduccia v. Summit Hill Constr. Co.,* 109 N.J.Super. 249, 262 A.2d 920 (1970); *O'Connor v. City of New York, supra; Shelton v. Industrial Comm.,* 51 Ohio. App.2d 125, 5 Ohio Op.3d 286, 367 N.E.2d 51 (1976); *City of Denton v. Van Page,* 701 S.W.2d 831 (Tex.1986); *Taylor v. Stevens County,* 111 Wash.2d 159, 759 P.2d 447 (1988).

Despite the recognition by these courts that a general duty to the public creates no cause of action, many have found that liability may be created where a special relationship exists between the injured plaintiff and a governmental agency. We now turn to this "special relationship" theory.

## II.

## SPECIAL RELATIONSHIP LIABILITY

### A.

Courts have recognized that a special relationship between an individual and a government entity can, in certain situations give rise to liability. Few courts have attempted to formulate any general rule. One exception is the Supreme Court of Minnesota, which, in *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801 (Minn.1979), outlined four factors, any one of which could give rise to governmental liability: (1) actual knowledge of the dangerous condition; (2) reasonable reliance by the plaintiff on the municipality's specific representation and conduct which caused the plaintiff to forego alternative conduct for his protection; (3) a statute which creates mandatory acts on the part of the municipality which are clearly for the protection of a specific class of persons, rather than for the public in general; and (4) failure of the municipality to use due care to avoid increasing the risk of harm. Applying these guidelines, the court in *Cracraft* found a building inspector not liable for his failure to discover a drum of flammable liquid which subsequently exploded and injured three students on school property.

Another exception is the Washington Supreme Court, which, in *Bailey v. Town of Forks,* 108 Wash.2d 262, 737 P.2d 1257 (1987), formulated these conditions which would give rise to liability: (1) a legislative enactment shows an intent to protect a particular class; (2) governmental agents have actual knowledge of a statutory violation and fail to take corrective action when they have a duty to do so and when the plaintiff is within the protected class; (3) governmental agents fail to exercise reasonable care after assuming a duty to warn or aid a particular plaintiff; (4) a plaintiff has a particular relationship to a governmental agent different from the general public and relies on explicit assurances given by the agent or inherent in the duty vested in the governmental agency; and (5) the governmental agency is operating in a proprietary rather than a governmental

---

465 (1987), where we said in the single Syllabus, in part: "Governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

function.[13] Based on this analysis, the court in *Bailey* found the municipality to be liable for a police officer's negligence in failing to arrest an intoxicated driver who negligently caused serious injuries to the plaintiff in an automobile accident a few minutes later.

Other courts,[14] like New York, do not attempt to define what relationship may give rise to a special duty which creates liability. In *Sorichetti v. City of New York*, 65 N.Y.2d 461, 492 N.Y.S.2d 591, 482 N.E.2d 70 (1985), liability was imposed on the city for injuries a father inflicted on his infant daughter. The child's mother had secured a protective order against the father and had contacted the police about his drinking and abusive conduct on a number of occasions, including the day the child was severely physically abused. In finding liability, the court's test was fact-specific:

"In the present case, we hold that a special relationship existed between the City and Dina Sorichetti which arose out of (1) the order of protection; (2) the police department's knowledge of Frank Sorichetti's violent history, gained through and verified both by its actual dealings with him, the existence of the order of protection, and its knowledge of the specific situation in which the infant had been placed; (3) its response to Josephine Sorichetti's pleas for assistance on the day of the assault; and (4) Mrs. Sorichetti's reasonable expectation of police protection." 65 N.Y.2d at 469, 492 N.Y.S.2d at 596, 482 N.E.2d at 75.[15]

It is apparent that most jurisdictions now accept the premise that if a special relationship exists between a local governmental entity and an individual which gives rise to a duty to such individual, and the duty is breached causing injuries, then a suit may be maintained against such entity.

### B.

It does not appear that we have had occasion to discuss the public duty doctrine in our cases. This may be because until our decision in *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975), municipal governmental immunity foreclosed suit, and there was little occasion to utilize the doctrine.[16] The same is true of other

---

**13.** Washington's special duty rules have been applied in several cases. In *Taylor v. Stevens County, supra,* the court found no liability on the county which had issued a building permit. Its inspector was claimed to have been negligent in not finding code violations. *Taylor* overruled *J & B Devel. Co. Inc. v. King County,* 100 Wash.2d 299, 669 P.2d 468 (1983), which had held code provisions on building permits and inspections to impose a duty on the county to exercise reasonable care. In *Hoffer v. State,* 110 Wash.2d 415, 755 P.2d 781 (1988), the state auditor was found to have a duty to bondholders of a public power system based on his audit letter assurances to them that the system's finances were in order when they were not. In *Livingston v. City of Everett,* 50 Wash.App. 655, 751 P.2d 1199 (1988), the city was found liable for injuries to a child who was bitten by a neighbor's dog after the city failed to investigate numerous complaints about the dog.

**14.** *Shearer v. Town of Gulf Shores,* 454 So.2d 978 (Ala.1984); *Williams v. State,* 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (1983); *Commercial Carrier Corp. v. Indian River County,* 371 So.2d 1010 (Fla.1979); *Wilson v. Nepstad,* 282 N.W.2d 664 (Iowa 1979); *Fudge v. City of Kansas City,* 239 Kan. 369, 720 P.2d 1093 (1986); *Stewart v. Schmieder,* 386 So.2d 1351 (La.1980); *Irwin v. Town of Ware,* 392 Mass. 745, 467 N.E.2d 1292 (1984); *Schear v. Board of County*

*Comm'rs,* 101 N.M. 671, 687 P.2d 728 (1984); *Brennen v. City of Eugene,* 285 Or. 401, 591 P.2d 719 (1979). The United States Supreme Court in *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), recognized the "special relationship" or "special duty" rule, but declined to elevate it to the status of a constitutional right under the Due Process Clause of the Fourteenth Amendment.

**15.** *See DeLong v. Erie County,* 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717 (1983); *Garrett v. Holiday Inns, Inc.,* 58 N.Y.2d 253, 460 N.Y.S.2d 774, 447 N.E.2d 717 (1983); *Florence v. Goldberg,* 44 N.Y.2d 189, 404 N.Y.S.2d 583, 375 N.E.2d 763 (1978); *Schuster v. City of New York,* 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958).

**16.** It must be remembered that local governmental immunities were originally judicially established and were not the product of statutes. Consequently, they could be judicially removed. *See* note 4, *supra,* with regard to the recent legislative enactment of local governmental immunity under W.Va.Code, 29–12A–1, *et seq.* (1986). The State's immunity from suit is constitutionally created. W.Va. Const. art. VI, § 35. *See Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987).

local governmental entities that had immunity before it was removed judicially. *Gooden v. County Comm'n*, 171 W.Va. 130, 298 S.E.2d 103 (1982) (county commissions); *Ohio Valley Contractors v. Board of Educ.*, 170 W.Va. 240, 293 S.E.2d 437 (1982) (county boards of education).

Prior to the abolition of municipal governmental immunity, we followed the general rule that a municipality or other local governmental body could be held liable if it performed a proprietary act in a negligent fashion. *E.g., Gallagher v. City of Westover*, 167 W.Va. 644, 280 S.E.2d 330 (1981) (collecting surface waters and casting them on plaintiff's lot); *Adkins v. City of Hinton*, 149 W.Va. 613, 142 S.E.2d 889 (1965) (negligent maintenance of city dump); *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964) (sewer line negligently maintained); *Ward v. County Court*, 141 W.Va. 730, 93 S.E.2d 44 (1956) (negligently maintaining boats at public park); *Harrison v. McOwen*, 126 W.Va. 933, 30 S.E.2d 740 (1944) (quarrying activity by city damaged adjoining land); *Ashworth v. City of Clarksburg*, 118 W.Va. 476, 190 S.E. 763 (1937) (negligently maintaining public swimming pool); *Warden v. City of Grafton*, 99 W.Va. 249, 128 S.E. 375 (1925) (negligently maintaining swimming pool); *Jordan v. City of Benwood*, 42 W.Va. 312, 26 S.E. 266 (1896) (collecting surface waters and casting them on plaintiff's lot). *See generally* Annot., *Liability of County for Torts in Connection with Activities which Pertain, or Are Claimed to Pertain, to Private or Proprietary Function*, 16 A.L.R.2d 1079 (1951).

It must be emphasized that in each of the foregoing cases the liability of the local governmental entity was tested by the same standard as a private corporation: before the entity could be held liable, it had to be found negligent. Courts in other jurisdictions have continued this distinction even when they recognize the public duty doctrine. If the activity is of a proprietary nature and the local governmental entity is found to be negligent, an action may be maintained. *E.g., Leger v. Kelley, supra; Stigler v. City of Chicago, supra; E. Eyring & Sons Co. v. City of Baltimore, supra; Irwin v. Town of Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984); *Stemen v. Coffman, supra; Fiduccia v. Summit Hill Constr. Co., supra.*

We have also recognized that a legislative enactment may affix liability on a city for the protection of a particular class. The most common illustration is W.Va. Code, 17–10–17, which requires municipal corporations and county commissions to keep streets and sidewalks in good repair. This statute specifically provides a right to recover damages for those injured.[17] *E.g., Long v. City of Weirton, supra; Burdick v. City of Huntington*, 133 W.Va. 724, 57 S.E.2d 885 (1950); *Parsons v. Roane County Court*, 92 W.Va. 490, 115 S.E. 473 (1922).

As we have earlier pointed out, there is no such explicit language in the City's building code providing for a cause of action. In this case, there is no showing of any special relationship giving rise to a duty to the plaintiffs. The fact that the City failed to make an inspection of the plaintiffs' apartment for possible fire violations is insufficient to create a duty.

In the present case, there was no issue of fact to be resolved. The case turned on a pure question of law. Under Rule 56(c) of the West Virginia Rules of Civil Procedure:

> " 'A motion for summary judgment may only be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.' Syllabus Point 2, *Mandolidis v. Elkins Indus., Inc.*, 161

---

17. The relevant portion of W.Va.Code, 17–10–17, provides:

    "Any person who sustains an injury to his person or property by reason of any road or bridge under the control of the county court [county commission] or any road, bridge, street, alley or sidewalk in any incorporated city, town or village being out of repair due to the negligence of the county court [county commission], incorporated city, town or village may recover all damages sustained by him by reason of such injury in an action against the county court [county commission], city, town or village in which such road, bridge, street, alley or sidewalk may be[.]"

8

W.Va. 695, 246 S.E.2d 907 (1978)." Syllabus Point 3, *Thomas v. Raleigh General Hospital,* 178 W.Va. 138, 358 S.E.2d 222 (1987).

Consequently, we conclude that the trial court was correct in granting the motion for summary judgment. Its ruling is, therefore, affirmed.

Affirmed.