**CITY OF DENTON, Appellant,**

v.

**W. A. WEEMS et ux., Appellees.**

**No. 17114.**

Court of Civil Appeals of Texas, Fort Worth.

May 8, 1970.

Rehearing Denied June 5, 1970.

Jack Q. Barton, City Atty., and W. Ralph Mann, Asst. City Atty., Denton, Tex., for appellant.

Coleman, Whitten & Philips, and William P. Philips, Jr., Denton, Tex., for appellees.

## OPINION

LANGDON, Justice.

City of Denton appeals from a $1,049.00 judgment against it for actual damages because of alleged negligent termination of electrical current. The case was tried to the court.

We reverse and render.

The appellees own property located at 1510–1512 N. Elm Street. A building is situated at the front of the lot. A separate building used as a garage repair shop is at the rear of the lot. Approximately one year ago appellees remodeled and placed three apartments in the rear of the building located at the front of the lot. They were in the process of adding two additional apartments in the front of the same building when they were confronted by the Chief Building Inspector and the City Planner both of the City of Denton inquiring as to whether or not they had obtained an electrical permit. An argument ensued and the two city employees were ordered off of the property. This was about 11:00 A.M. on May 28, 1969.

It is undisputed that the appellees had made no application for an electrical permit and that none had been issued covering the first three apartments or the two under construction.

The owners (appellees) were requested to stop the work of the carpenters who were covering the electrical wiring with wall panels and to obtain an electrical permit in order that the City could inspect the wiring. This they declined to do. The same employees again visited the construction site on the following day, May 29, around noon and once again were evicted. The work of covering the wiring was still in progress. No effort had been made up to this point to obtain a permit. On this same date, May 29, the Chief Building Inspector, by written memorandum, instructed the Director of Utilities (City of Denton) to terminate the electricity at 1510

North Elm at 5:00 P.M., the address at which the two buildings in question are located.

There was testimony that there were two meters located side by side; one meter and two boxes; or two meters and two boxes. It is undisputed that all were located at the same place. One served the garage repair shop and the other served the apartment building. Admittedly they were poorly marked. By mistake the current to the garage repair shop was terminated. This current was restored in about one and one-half (1½) hours and the operator of the garage has made no complaint. The current in the building containing the apartments was terminated at 5:00 P.M. or about ninety (90) minutes later when the above mistake was corrected. While there are two meter addresses on the same lot, i. e., 1510 and 1512, the record leaves no doubt as to which building meter the chief inspector intended the electricity to be terminated and the current was correctly terminated at that location.

It is stipulated that the current was restored to the apartment building on June 3 after an electrical permit had been obtained and an inspection allowed.

■ The building inspector was acting in a governmental capacity in directing that the current be terminated until an inspection, required by City ordinance, could be made to determine whether or not the wiring was hazardous. This was his responsibility under the ordinance.

The chief argument of appellees seems to be that they thought someone else had obtained the permit for them. Yet they refused to act on the matter after notice that no such permit had been issued. It is further argued that since the inspection finally allowed by them reflected that the wiring was not hazardous it was therefore unnecessary to terminate the electricity. Both arguments are untenable. To hold otherwise would in effect repeal the ordinances which were enacted to protect the general public from the hazards of fire

and to permit inspections to discover and eliminate hazards before life and property became endangered.

"The power of a city, by proper ordinance, to regulate the construction, reconstruction, and repair of buildings within its limits so as to prevent and abate fire hazards is of universal recognition. In fact, it is an essential attribute of municipal government under modern conditions. The proper exercise of such police power is for the public good and enures to the benefit of insurer and insured alike." Scanlan v. Home Ins. Co., 79 S.W.2d 186 (Beaumont Tex.Civ.App., 1935, error ref.).

■ The ordinance in question is clear and definite in its object to promote public safety by preventing and abating fire hazards and is a proper and legitimate exercise of the police power. The validity of the ordinance in question has not been attacked.

■ An ordinance requiring a property owner to obtain building permits before the erection of a building is a valid exercise of a municipality's police power. City of Corpus Christi v. Unitarian Church of Corpus Christi, 436 S.W.2d 923 (Corpus Christi Tex.Civ.App., 1968, ref., n. r. e.).

■ A municipal corporation in the absence of a suit authorized by statute is not subject to suit in the valid exercise of the police power delegated to it. City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872 (Tex.Com.App., 1937).

■ Unreasonable enforcement does not vitiate an ordinance which is otherwise legal. City of Kermit v. Rush, 351 S.W.2d 598 (El Paso Tex.Civ.App., 1961, no writ hist.).

The case of the City of Houston v. Schlueter, 340 S.W.2d 539 (Houston Tex. Civ.App., 1960, no writ hist.) involves a fact situation similar to the case at bar.

■ A municipality is not liable for the negligence of a building inspector in the

performance of his duties, because such duties are governmental functions. McQuillin Municipal Corporations, 3rd Edition Revised, Volume 18, § 53.24, Immunity as to "governmental" duties, pages 167–179 both inclusive, and Texas cases cited therein; Valenti v. Mosholu Housing Corporation, 164 Misc. 788, 299 N.Y.S. 590 (Sup. Ct. Bronx County, 1937); Stubley v. Allison Realty Co., 124 App.Div. 162, 108 N.Y.S. 759 (Sup.Ct., App.Div., 1st Dept., 1908); Lindemann v. City of Kenosha, 206 Wis. 364, 240 N.W. 373 (Wisc.Sup.Ct., 1932).

■ Public utilities are subservient to the police powers of the City and must adhere to the enforcement of such power. Texas Power & Light Company v. City of Garland, 431 S.W.2d 511 (Tex.Sup., 1968). In the instant case the utility division of the City is required by ordinance to comply with the directives of the building inspector.

The essential elements of this case, as reflected by the record, may be stated in the following manner.

1. It is undisputed that the appellees were required by ordinance to obtain an electrical permit before commencement of work on the project in question.

2. It is undisputed that they did not make application for and did not obtain such a permit.

3. It is undisputed that even after notice and a reminder concerning such permit the appellees failed and refused to secure such permit until after their current had been cut off.

4. It is undisputed that the building inspector had the duty and the right in the enforcement of the ordinance to order termination of the electricity in the building where the violation occurred.

5. The electricity was terminated in the building where the violation of the City ordinance occurred.

6. The representative of the Utility Division of the City was required by ordinance to terminate the electricity at the direction of the building inspector and this he did.

Awarding damages in a suit such as this is to reward one for defying ordinances which were enacted to protect life and property from the hazards of fire resulting from improper wiring.

■ While we are of the opinion and hold that the appellees are not entitled to any damages under the facts of this case we wish to point out that the damages which were awarded by the trial court are not supported by any competent evidence. Such evidence at best amounts to no more than a scintilla.

None of the reported damages involving refunds of advance rentals, deposits or lost rentals is tied to the termination of electrical current. It could just as well relate to the noise of new construction or any number of other items. One young man was told they could not rent to him because the electricity was cut off. There was no evidence he saw the apartment or would consider renting it. Further appellees did not know the electricity was restored until more than a week after such restoration. The electricity could very well have been on when the young man was turned away.

We have very carefully examined the entire record in this case and have concluded that all of the points relied upon by the appellant, including those attacking the findings of fact and conclusions of law which were made and filed by the trial judge, should be and the same are sustained. The judgment of the trial court is accordingly in all things reversed and set aside and judgment here rendered for and on behalf of the City of Denton.

Reversed and rendered.

MASSEY, Chief Justice (dissenting).

I am of the opinion that the majority have fallen into the error of finding equity

in a law case and deciding upon a disposition under equitable principles. They have held that by reason of the fact that there was the undoubted right of the City to order termination of the electric power at the place where such service was terminated, and by reason of the fact that the place of termination was that where the City desired the service terminated, there was justifiable and non-negligent termination at such place by its electrical department despite the fact that the electrical department was never directed or ordered to terminate power, or after such termination to decline to restore such, at the particular place. The trial court held to the contrary, and awarded damages as a consequence predicated upon the conclusion that there was negligence on the part of the City utility department in shutting off the power at the place in question without determining necessity of so doing, and without orders from the City in its governmental capacity, etc.

Having originally drawn the case according to this court's custom of rotation I prepared an opinion affirming the judgment of the trial court on condition of a remittitur. I adhere to the opinion that the damages allowed below were excessive, but that some damages were proved. My comments, however, will be confined to the matter of the City's liability for damages.

Confusion may be readily resolved if the City is thought of as the sovereign in respect to its police power and is thought of as the ordinary utility company in connection with its operation of an electric utility. If this be done we have for consideration a case where the utility company, without direction from the sovereign, terminated plaintiffs' service at the wrong place as the result of negligent mistake. That the termination of service was at the place where the sovereign desired such to occur is in my opinion wholly immaterial. In the record there is total absence of any proof that the sovereign ever communicated its "desire" to the utility company, as well as like absence of proof that the sov-

ereign ever "ordered" the utility company's action. The same thing applies to the failure of the utility company to restore service, upon plaintiffs' request, at the place where the service had been earlier terminated without any order from the sovereign.

For these reasons I respectfully register my dissent.

## ON MOTION FOR REHEARING

LANGDON, Justice.

The appellees, W. A. Weems and wife, Virgie Weems, state that (1) they have no quarrel with the long established rule of law that a municipality is not liable for the negligence of a building inspector in the performance of his duties because such are governmental functions, and (2) in the instant case the judgment was in no way predicated upon negligence of the building inspector.

Appellees emphasize that the judgment is based upon the trial court's finding that an employee of the City electrical department was negligent in terminating the current at the apartment building because of his failure to run a standard test to determine whether the electrical current was energized in the area in dispute and that this negligence was the proximate cause of the damage sustained by the plaintiffs. Appellees further emphasize that whether or not the building inspector was guilty of negligence is not an issue in this case.

We should like to emphasize that the only reason the electricity was terminated was because the building inspector ordered that it be terminated. His order of termination was authorized by ordinance.

The electrical department, once it received such an order of termination, was required by ordinance to comply with it. The electrical department of the City had no other alternative. It was under no duty to apply any test of its own or to ignore

the order of the building inspector. It had no discretion in the matter.

With reference to the "standard test" referred to by appellees we are unable to find in this record that such a test was established.

It was undisputed that the utility department of the City had no right to go beyond the light pole or the meter. It is undisputed that there were only two meters at the location here involved. The one controlling the area in question was terminated pursuant to the order of the building inspector. But for such order it would not have been terminated.

Appellees' motion for rehearing is this day overruled.